## INDEMNITY INSURANCE COMPANY OF NORTH AMERICA v. SMITH

[No. 77, October Term, 1950.]

*Decided February 8, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*J. Gilbert Prendergast,* with whom were *Clark, Thomsen & Smith* on the brief, for appellant.

*Melvin J. Sykes,* with whom were *Paul Berman, Sigmund Levin,* and *Theodore B. Berman* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This attachment case was filed in the Superior Court of Baltimore City by Mary Smith, a resident of Baltimore, against Indemnity Insurance Company of North America, garnishee, to collect on a judgment which she had recovered against Catherine Pullman and James E. Pryor.

Plaintiff was injured on October 5, 1946, when a trackless trolley in which she was riding collided with an automobile owned by Mrs. Pullman and operated by Pryor at the intersection of Caroline and Orleans Streets. In December, 1946, she instituted suit for damages against the Baltimore Transit Company, operator of the trolley. In January, 1947, Pryor and Mrs. Pullman were made third party defendants. Copies of the declaration and third party claim were served on them, and they forwarded the papers to the insurance company, which had issued a policy of liability insurance to Mrs. Pullman. The company authorized its attorneys to enter their appearances for the third party defendants.

The case was set for trial on September 27, 1947. A week before that date a claims investigator of the insurance company went to 39 South Caroline Street, the address given by Mrs. Pullman and Pryor as their home, but was unable to find them. The judge postponed the trial until October 27 in order to give the attorneys further opportunity to look for them, but neither could be found. On October 14 the superintendent of the company mailed registered letters to them, but the letters were returned undelivered. Summonses for them were also returned *non est*.

The attorneys for Pryor and Mrs. Pullman asked for leave to strike out their appearances, but the judge ordered them to continue with the defense of the case. On October 28 the jury found in favor of the transit company, but awarded plaintiff a verdict against Pryor and Mrs. Pullman for the sum of $1,500. On October 31 judgment was entered upon that verdict.

In 1948 a writ of *fieri facias* was issued on the judgment and was returned *nulla bona*. An attachment was thereafter issued on the judgment and laid in the hands of the insurance company. The company pleaded *nulla bona*. It admitted that it had issued a policy of liability insurance covering the automobile owned by Mrs. Pullman and operated by Pryor, but claimed that the policy did not give them any coverage because they breached its conditions "by failure to co-operate with the insurer in the defense of the suit brought against them, by departing from their respective addresses after writs of summonses had been served on them, without giving the insurer notice of their departure or informing it of their new address or whereabouts, by failing or refusing to attend the trial and to testify as witnesses on their behalf, but on the contrary, making themselves unavailable to the insurer."

When the attachment case came on for hearing before a jury in June, 1950, the insurance policy was admitted in evidence. The policy provides that in consideration of the payment of the premium, the company agrees to pay all sums which the insured shall become obligated to pay by reason of the liability imposed upon her by law for damages sustained by any person or persons caused by accident and arising out of the ownership, maintenance or use of the automobile; and to defend any suit against the insured alleging such injury and seeking damages on account thereof. The policy provides, however, that no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of the policy.

The provision of the policy with which we are particularly concerned on this appeal is the co-operation clause, which provides as follows: "The insured shall co-operate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

The trial judge refused to direct a verdict in favor of the garnishee on the ground that, although Mrs. Pullman and Pryor did not appear at the trial, there was nothing to show that they knew that the case was to be tried. On June 8 the jury awarded plaintiff a verdict against the garnishee for $1,798, which included the judgment debt, interest thereon and costs. On June 12 judgment was entered upon the verdict. The garnishee appealed from that judgment.

It is conceded that an insured should not be charged with a breach of the co-operation clause merely because of immaterial and unsubstantial failures. It is thus a well settled rule that to relieve an insurer of liability on the ground of lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect. *State Automobile Mutual Insurance Co. v. York,* 4 Cir., 104 F. 2d 730. But the particular condition alleged to have been violated in this case is the provision that the insured shall attend hearings and trials and assist in securing and giving evidence. The failure of the insured to comply with this condition precludes recovery by the person injured from the insurer, even though co-operation might not have defeated the plaintiff's claim for damages. It is plain that a condition in a liability insurance policy requiring co-operation of the insured in the defense of any action brought against him by a person injured is of the utmost practical importance, for without the aid of the insured in the preparation of the case and his presence at the trial, the insurer is handicapped, even to the point that defense of the case is impossible. The insured under a liability policy containing a co-operation clause is obligated to assist in good faith in making every legitimate defense to a suit for damages. *United States Fidelity & Guaranty Co. v. Williams,* 148 Md. 289, 129 A. 660; *Farm Bureau Mutual Automobile Insurance Co. v. Garlitz,* 180 Md. 615, 619, 26 A. 2d 388. If he refuses to give the information which the insurer needs to make

the defense, or absents himself so that his testimony cannot be obtained, recovery on the policy should be denied, if the insurer acts with good faith and diligence. *Hynding v. Home Accident Insurance Co.*, 214 Cal. 743, 7 P. 2d 999, 85 A. L. R. 13. The judgment creditor, who sues on a policy indemnifying the insured against claims for damages, stands in the shoes of the insured and is chargeable like the insured with any breach of conditions on which liability depended. *Rushing v. Commercial Casualty Insurance Co.*, 251 N. Y. 302, 167 N. E. 450.

It was urged by appellee that the Court cannot rule as a matter of law that an insured has committed a breach of his liability policy merely because he left the State before the trial of a damage suit entered against him. We do not dispute that proposition. We recognize that two questions may arise when the insured has left the State: (1) Was the insured guilty of bad faith in leaving? and (2) Did the insurer use reasonable diligence in trying to locate the insured to procure his attendance at the trial?

Appellee relied heavily on *Pigg v. International Indemnity Co.*, 86 Cal. App. 671, 261 P. 486. But that case is entirely different from the case at bar. In that case the insured left California on a trip to Japan, and the attorneys made no effort to get in touch with him until four days before the date of the trial. The Court said that the trial judge was justified in holding (1) that the insured was not sufficiently advised by the attorneys, and (2) that he left for Japan in ignorance of any necessity for remaining in the city until the trial.

Appellee also relied on *Finkle v. Western Automobile Insurance Co.*, 224 Mo. App. 285, 26 S. W. 2d 843. That case also is different from the case at bar. The defendants had given assurance that they would co-operate, but left St. Louis several months before the case was set for trial. The Court said that, while it could be inferred from their subsequent conduct that their departure from the city was prompted by bad faith, it could also be inferred that they had left in search of a location where

their business prospects would be better, and that their failure to notify the company's attorney that they were leaving was due to ignorance or inadvertence, and not to bad faith. It appeared that the defendants did not know when the case would be called for trial, and it did not conclusively appear that they made any attempt to secrete themselves in their new home. The Court, therefore, held that there was an issue for the jury to pass upon.

In the case before us Mrs. Pullman reported the accident to the company by telephone, and she was instructed to send Pryor, the driver of her automobile, to the insurance office to make a detailed report. Pryor called at the office on October 11, 1946, and filled out a report of the accident. Mrs. Pullman and Pryor were notified of the suit for damages. But when the attorneys for the insurance company were preparing for the trial, it was impossible to locate either of them. They had not notified the company of their intention to leave the city, and had not left any forwarding address to enable the company to get in touch with them. The investigator could not find any relative or friend who knew where they had gone. Mrs. Pullman's father said that she and Pryor had left in February for New York or New Jersey, but he "did not know which State they were in." The investigator further testified: "I inquired whether or not he had received mail or forwarding address from them. He informed me that he had not. * * * I also inquired about the neighborhood whether or not anyone in the neighborhood knew of the whereabouts of either Pullman or Pryor. The entire investigation was negative along that line."

We are convinced that the attitude of Mrs. Pullman and Pryor was one of wilful violation of the clause requiring co-operation. They did not tell relatives or friends where they were going. They completely disappeared within a short time after they were notified of the suit against them. They succeeded in eluding everyone. In disposing of this case, we can use the same

words used by *Chief Judge Cardozo in Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271, 160 N. E. 367, 369, 72 A. L. R. 1443: "In divers ways, there might be defense to a charge of negligence, or at all events palliation, though mistake were conceded. The default of the assured was more than sluggishness or indifference, phases of thought and conduct that might be the subject of varying inferences when considered by a jury. It was so avowed and purposed that but one inference is possible. If this was co-operation, one is at a loss to imagine when co-operation could be lacking."

We are convinced that the evidence shows conclusively that the insured violated the co-operation clause. For that reason the trial judge should have directed a verdict in favor of the garnishee. The judgment in favor of plaintiff must, therefore, be reversed.

*Judgment reversed, without a new trial, with costs.*