767 A.2d 831

ALLSTATE INSURANCE COMPANY,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.

No. 43, Sept. Term, 2000.

Court of Appeals of Maryland.

March 5, 2001.

William N. Zifchak (Sasscer, Clagett & Bucher, on brief), Upper Marlboro, for petitioner.

Michael J. Budow (Richard E. Schimel and Laura Basem Jacobs of Budow and Noble, P.C., on brief), Bethesda, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

WILNER, Judge.

It is common, indeed universal, for automobile insurance policies to contain clauses that require an insured who is involved in an accident to cooperate with the company in the investigation and resolution of any claim made against the insured. In the case at bar, the policy, issued by petitioner State Farm Insurance Company to Latricia Kirby, required Ms. Kirby, among other things, to "cooperate with us and, when asked, assist us in: a. making settlements; b. securing and giving evidence; [and] c. attending and getting witnesses to attend hearings and trials."

Kirby was involved in an automobile accident and, eventually, two claims were made against her. Although she initially cooperated with the insurer, her cooperation was short-lived. As a direct consequence of her subsequent lack of cooperation, State Farm was precluded from defending the claims, and a judgment in the amount of $150,000 was entered against Kirby. Maryland Code, § 19–110 of the Insurance Article permits an insurer to disclaim coverage on the ground that the insured has breached the policy by failing to cooperate with the insurer only if the insurer establishes that the lack of cooperation has resulted in actual prejudice to the insurer. The Circuit Court for Prince George's County found that State Farm was actually prejudiced, but only to the extent of half of the judgment, and that it could therefore disclaim only to that extent. The Court of Special Appeals concluded that, on the record in this case, State Farm was excused from paying the entire judgment. *State Farm v. Gregorie,* 131 Md.App. 317, 748 A.2d 1089 (2000).

## BACKGROUND

The accident at issue occurred shortly after midnight on February 10, 1994, on the Capital Beltway, near its intersection with Kenilworth Avenue. It had snowed heavily during

the day and many of the side roads were snow-covered. There was a dispute as to the precise condition of the Beltway. In a statement given to State Farm four days after the accident, Kirby said that she was traveling about 50–55 miles per hour and was "worried about the ice that was on the road," when she was hit from the rear. The car that struck her was being driven by Mark Winston. Corazon Gregorie, the owner of that car, was in the front passenger seat. Because she did not like to drive in the snow, Gregorie had asked Winston, her boyfriend, to drive. Kirby said that she was watching the road and did not see the Gregorie vehicle prior to the collision. She assumed that Mr. Winston was going too fast.

Some of what Kirby said in her report was disputed by other witnesses, who were not in complete agreement with one another. The police report stated that the road was wet, but not icy. Gregorie said the road was dry; Winston said that it was damp. In deposition testimony, Gregorie said that Winston was going about 55 miles per hour in the third lane of traffic—the same lane in which Kirby was driving. She described the accident:

"We were approaching the Kenilworth Avenue exit, that is the exit that we take when we want to go home. There was a dark car in front of us. It had no lights. I noticed this, and it was also going very slow. Mr. Winston was not reacting to this car. I had seen the car, and he was not reacting. And at the point that I thought he should be maneuvering or braking, he wasn't. So at that point, I said look out—something to that effect, or watch out, look out—at which point, he braked."

The braking was too late.

Winston stated in deposition that he was in the second, not the third lane, about 100 yards from the beginning of the Kenilworth Avenue exit ramp, and was preparing to move into the slow lane to get on to the exit ramp when he heard Gregorie tell him to watch out. He had been momentarily distracted, as he turned his head to the right to keep track of

a car traveling in the right lane just behind him. He had just sped up a bit to be able to slide into the right lane ahead of that car when he heard Gregorie's warning. Winston said that he had been driving about 55 miles an hour when he hit the brakes. He stated that he had not noticed Kirby's car before then. In contrast to Gregorie, Winston said that he saw brake lights and believed that Kirby had on her head-lights as well. Kirby was driving, he said, at a very low rate of speed.

The only independent witness in the case, Linda Weiner, was driving just behind Winston, in the second lane, at about 55 miles per hour. In a statement given to State Farm several weeks after the accident, she said that she observed Kirby's car, that it was proceeding very slowly, and perhaps was even stopped, and that its hazard lights were on. She did not recall any problem with ice on the road. Sensing the imminence of a collision between Winston and Kirby, she pulled immediately to the right and was just able to avoid a collision herself. Based on the witness statements taken from Kirby and Weiner, State Farm concluded that, as Kirby had been rear-ended, there was no liability on her part.

The litigation began in January, 1995, when Gregorie filed suit against Winston in the Circuit Court for Prince George's County, seeking $1 million in damages. She claimed that he failed to maintain a proper lookout, to yield the right of way, to operate his vehicle at a safe speed, to maintain a safe distance between his vehicle and the one in front, and other-wise to operate the vehicle safely and in accordance with traffic regulations. Winston's negligent and reckless opera-tion of the vehicle, she averred, directly and proximately resulted in the collision and caused her injury. Kirby then filed suit against Winston to recover damages for *her* injuries. That complaint does not seem to be in the record, but we assume that, in similar fashion to Gregorie's complaint, it claimed that Winston was negligent in various respects and that his negligence caused the collision.

Winston then sued Kirby; he filed a third-party complaint against her in the action filed by Gregorie and a counterclaim in Kirby's action. In his third-party complaint, he denied all allegations of wrongdoing and asserted that the accident was caused by the "sole and/or contributory negligence" on the part of Kirby, in that she was operating her car on a 55 mile per hour road at night at a greatly reduced rate of speed, without proper headlights or tail lights, and without proper warning to traffic behind her. The counterclaim is not in the record, but we assume it was consistent with the third-party complaint and are informed that it sought contribution and indemnification. To complete the circle, Gregorie then filed an amended complaint, in which she added Kirby as a defendant. Though continuing to maintain that Winston was negligent, Gregorie asserted that Kirby was also negligent in operating her vehicle at a low speed and without displaying proper lighting. The two actions (CAL 95–551 and CAL 95–2881) were consolidated.

In her capacity as a plaintiff, Kirby was represented by William Dawe, III, Esq. When apprised of the actions against her—the suit by Gregorie and the third-party claim and counterclaim by Winston—State Farm retained Richard McBurrows, Esq., to represent her as a defendant. McBurrows filed an answer on her behalf to the amended complaint and to Winston's counterclaim and, on February 23, 1996, sent her a letter of representation. The problem that led to what is now before us is that, at some point while this was transpiring, Kirby got married, moved to Decatur, Georgia, and washed her hands entirely of the matter. McBurrows' letter of February 23 and a follow-up letter of March 6 that were sent to her Maryland address were returned. On May 14, 1996, having learned of her new address in Georgia, he advised her of a deposition scheduled for June 10, and received a reply that she would not be attending. In fact, she did not appear for her deposition, either in June, when it was first scheduled, or in October, when it was rescheduled. Several further attempts to reschedule the deposition were unsuccessful. She failed to respond to letters from McBurrows in

November and December. Interrogatories and a demand for documents filed by Gregorie and interrogatories filed by Winston also went unanswered.

Dawe was having the same problem and, on December 2, 1996, he moved to strike his appearance. In his motion, he said that he had spoken with Kirby in June and that she "doubted that she wanted to pursue the action." On December 20, the court granted his motion. Ten days later, State Farm's Claim Superintendent wrote to Kirby, admonishing her that, if she continued to ignore requests for assistance, State Farm may refuse to protect her and she may be liable for any judgment rendered against her. On January 20, 1997, McBurrows wrote to her, confirming that, if she continued to withhold her cooperation, judgment would be taken against her and she would be responsible personally. That letter, sent by certified mail, was returned unclaimed.

In February, 1997, Gregorie and Winston each filed a motion for discovery sanctions, noting Kirby's refusal to respond to discovery and the fact that trial was scheduled for May 29, 1997. They asked that Kirby be barred from opposing their claims and prohibited from offering any evidence at trial. McBurrows opposed the motions and asked for additional time. The court responded initially by dismissing Kirby's lawsuit and giving her until May 6, 1997 to respond to all outstanding discovery requests. State Farm wrote to her, by regular and certified mail, on February 14, March 5, April 7, and April 11 requesting that she contact McBurrows; the certified letters were returned unclaimed. State Farm also employed an investigator who, at various times, left messages for Kirby with her father, her sisters, her husband, and her employer, and had letters physically delivered to her home in Georgia, all to no avail. After 15 to 20 attempts, he was finally able to speak directly to Kirby, who, on two occasions, promised to contact State Farm or McBurrows but never did so. On May 6, 1997, the court entered an order precluding Kirby from introducing any evidence concerning the circumstances surrounding the accident.

At some point, the court bifurcated the remaining case—*Gregorie v. Winston and Kirby*—and set trial on the issue of liability for May 29, 1997. State Farm sent a letter to Kirby on May 7, 1997, advising her of the trial date and informing her that State Farm would pay the travel, food, and lodging expenses for her to attend trial. An additional letter was sent on May 22, 1997, informing her, among other things, that, despite the preclusion order, the plaintiff "has indicated a willingness to allow you to present evidence at the May 29, 1997 trial if you appear to testify in this matter." Kirby nonetheless failed either to respond to the letter or to attend trial. The only witnesses at trial were Gregorie and Winston. McBurrows was present and was permitted to cross-examine the witnesses and argue to the jury, but, in accordance with the pre-trial order, he offered no affirmative evidence regarding the accident. The jury was thus left with essentially uncontradicted evidence that Kirby was traveling either very slowly or had stopped, late at night, on a clear, dry, or slightly damp beltway, either without lights or with only a "flicker" of light. Weiner's statement, that she observed hazard lights and that she was able to see Kirby's car, was not before the jury. After a short deliberation, the jury concluded that Kirby was negligent and that Winston was not. McBurrows filed a motion for judgment N.O.V. and for new trial, which was denied.

In July, 1997, prior to the trial on damages, Gregorie filed a declaratory judgment action against State Farm and her own insurer, Allstate Insurance Company, averring that (1) on the basis of Kirby's failure to cooperate, State Farm had refused to accept the jury's determination of liability and had taken the position that there was no coverage for her, and (2) Allstate had declined to afford uninsured motorist coverage under its policy on the ground that State Farm was not entitled to deny coverage to Kirby because it could not show any actual prejudice resulting from Kirby's failure to cooperate. Gregorie asked that the court determine the parties' respective rights under the two policies and declare either that State Farm was liable under its policy or that Allstate was

liable for uninsured motorist benefits under its policy. State Farm then filed its own complaint for declaratory judgment, in which it averred that Kirby had a meritorious defense to Gregorie's action and likely would have prevailed had she cooperated and that, as a result of her failure to cooperate, she had breached the obligations of the policy. It asked for a judgment declaring that State Farm therefore had no duty to defend the claim or indemnify Kirby. Allstate answered both complaints and asserted that (1) State Farm was not prejudiced by Kirby's lack of cooperation, and (2) it failed to use proper care to obtain and assure her cooperation. Allstate also filed a cross-claim against Kirby for indemnification. The two declaratory judgment actions were consolidated with each other and with the underlying tort action.

At trial in the declaratory judgment case, State Farm produced evidence of the many efforts it had made—84 within a six-month period—to contact Kirby and obtain her cooperation, including an offer to pay her travel, lodging, and food expenses to come to Maryland for the trial. On the issue of prejudice, it introduced the transcript of the May 29 trial on liability and the evidence that it would have produced at that trial but for the preclusion order. That evidence consisted of police and weather reports, photographs of Kirby's vehicle showing the extensive damage to the rear, and Kirby's and Weiner's recorded statements. It also produced the live testimony of Weiner who, as in her deposition, said that the Gregorie vehicle was traveling at 55–60 miles per hour and that, even from her position behind that vehicle, she could see Kirby's car and that it had hazard lights flashing.

The court, sitting without a jury, determined as a fact that State Farm had made ample effort to obtain Kirby's cooperation, that Kirby had failed to cooperate and thus breached her contractual obligation under the policy, and that State Farm was prejudiced by not being allowed to produce evidence. In that last regard, the court noted Ms. Weiner's testimony that she saw light from the Kirby vehicle and that the vehicle may have been traveling at about 20 miles per hour. It mentioned as well Kirby's initial statement that she was going about 55

miles an hour, and, notwithstanding that there was no such proffer, it pondered whether State Farm, but for the preclusion order, may have been able to produce an accident reconstruction expert to opine as to how fast Kirby was traveling. "*At a minimum,*" the court found, State Farm was prejudiced in that "Mr. Winston's liability as a co-defendant would have been substantially increased and the likelihood of a joint judgment against Ms. Kirby and Mr. Winston was fairly high." (Emphasis added). It iterated later in its oral opinion that, "[h]ad Ms. Weiner testified in this case, just that single witness, it is more than probable, when one reads the transcript, that *at least* a co-defendant liability would have occurred." (Emphasis added). The court concluded that "[t]here is more than a substantial likelihood that the insured would not have been found *solely* liable for this motor vehicle accident" and "therefore State Farm has been prejudiced as a result of Ms. Kirby's non-cooperation." (Emphasis added).

The court announced that it would prepare and sign an order declaring that State Farm was not obligated to defend or indemnify Kirby for the claims presented by Gregorie and severing Gregorie's case from the declaratory judgment actions. Counsel for Allstate then observed that "[i]f the less favorable result, that State Farm suffered by Ms. Kirby's non-cooperation is joint liability, then it would appear that the damages that had been suffered by State Farm is some pro rata share of the verdict. Otherwise, State Farm, with the non-cooperation finds itself in a better position than they would have been in had Ms. Kirby cooperated." The court responded that it intended to enter the judgment as it had announced, but that the parties could present that issue through a motion for reconsideration. The next day, the court entered a written order that (1) recited that it had issued an "Oral Opinion holding that State Farm Mutual Automobile Insurance Company is not obligated to defend or indemnify [Kirby] for the claims and/or causes of action presented by [Gregorie] as advanced in CAL 95–00551," (2) severed Gregorie's case, which had yet to be tried on damages, from the declaratory judgment actions, and (3) lifted the stay that had

been entered in Gregorie's case and ordered trial on the damages issue in that case. Nothing was said in the order about any liability on the part of Allstate.

Allstate did, indeed, file a motion for reconsideration, and it was granted. In a written memorandum and order filed on May 3, 1999, the court, preliminarily, noted that "[n]o one can contend seriously that Kirby's lack of PreTrial assistance or testimony at trial will affect Gregorie's damage verdict" and concluded that it was not premature to resolve the issue raised by Allstate prior to a damage award. In determining the extent of State Farm's prejudice, however, it said that, given what it regarded as the closeness of the case, it could, sitting in place of the jury, "consider as to what evidence would have been admissible at trial and what result would have occurred had this evidence been introduced in the liability trial." In so doing, the court determined that Kirby's statement that she was proceeding at 55 miles per hour was "suspect," and it found as a fact that she was traveling at only 20 miles per hour or less. That, it said, was evidence of negligence. The court acknowledged that it did not know why Kirby was driving so slowly and asked, rhetorically: "Was there a sudden mechanical failure? Was Kirby experiencing some illness that caused her to slow or stop? Did Kirby see some ice or snow that other witnesses overlooked? Had Kirby slowed to avoid a collision with another motor vehicle or animal or object on or near the Beltway?"

The court said that it was convinced, by a preponderance of the evidence, that, had Kirby cooperated, Winston would also have been found negligent. It based that determination on the fact that Winston was driving at 55–60 miles an hour, glancing in his rear view mirror and over his right shoulder for "an appreciable length of time," that Gregorie saw the Kirby vehicle two to three seconds before he did, that Winston's testimony that the Kirby vehicle had no lights on "is not persuasive" in light of Weiner's testimony, and that "[h]ad Winston looked to see that which was plainly there to be seen, he would have seen the Kirby vehicle at least at the same time

that Gregorie did." Citing *Fid. & Cas. Co. v. McConnaughy,* 228 Md. 1, 179 A.2d 117 (1962), the court determined that the appropriate remedy was to grant the motion for reconsideration and to hold "that State Farm's actual prejudice is limited to the value of its loss of the Right of Contribution from Winston, that is to say responsibility for fifty percent (50%) of Gregorie's damages up to the limits of State Farm's liability coverage on the Kirby vehicle." The order, which constituted the last three paragraphs of the memorandum, simply stated that the motion for reconsideration was granted "and the Oral Declaration of Rights and Responsibilities is amended in accordance with this decision." [1]

On May 20, 1999, the issue of damages in the underlying tort action was tried before a jury and resulted in a verdict in favor of Gregorie in the amount of $150,000. Application of

---

**1.** Once again, we are presented with a declaratory judgment action in which there is no written declaratory judgment. We have admonished trial courts that, when a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, *must be in writing.* It is not permissible for the court to issue an oral declaration. The text of the judgment must be in writing. *See Harford Mutual Ins. Co. v. Woodfin,* 344 Md. 399, 414–15, 687 A.2d 652, 659 (1997); *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 435, 644 A.2d 34, 38 (1994). Nor, since the 1997 amendment to Maryland Rule 2–601(a), is it permissible for the declaratory judgment to be part of a memorandum. That rule requires that "[e]ach judgment shall be set forth on a separate document." When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately. Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined. Another problem with the order entered in this case is that no declaration was made with respect to any liability on the part of Allstate, which was an issue in the case.

the declaratory judgment to that verdict meant that, given the policy limit of $100,000, State Farm retained liability for $75,000 of the judgment entered for Gregorie.

On State Farm's appeal, the Court of Special Appeals agreed that the insurer was actually prejudiced by Kirby's non-cooperation but, in a split decision, disagreed with the trial court's analysis of what might have occurred if Kirby had acted differently and cooperated. The approach of essentially retrying the case on the evidence it assumed would have been offered, the court said, "requires speculation about the missing testimony, and how a fact-finder would react to same." *State Farm v. Gregorie, supra,* 131 Md.App. at 335, 748 A.2d at 1099. The trial court, it held, had insufficient information about Kirby's potential testimony to determine whether she would have been declared negligent had she testified. Accordingly, the appellate court held that Kirby's failure to cooperate "relieves [State Farm] of any liability on the underlying claim." *Id.* The court's mandate, however, was simply to reverse the Circuit Court's judgment and not to remand the case for entry of a proper declaratory judgment.

We granted Allstate's petition for *certiorari* to consider (1) the correct legal standard for determining the actual prejudice that an insurer must establish under § 19–110 of the Insurance Article in order to disclaim coverage by reason of an insured's failure to cooperate, and (2) whether, when an insurer establishes *some* amount of actual prejudice, it may disclaim all coverage or only such coverage as is proportionate to the prejudice shown. Implicit in the second question is whether, even if the general answer to that question is that the disclaimer may be limited to the amount of prejudice shown, the Court of Special Appeals made a substantive error in its resolution of this case.

## DISCUSSION

As we noted, it is common for automobile insurance policies to require that an insured who is involved in an accident cooperate with the insurer in the investigation and defense of

any claim made against the insured. It is also common for such policies to require, as well, that the insured (1) promptly report to the insurer any accident and any claim that is made, and (2) promptly forward to the insurer any suit papers served on the insured. Insurers traditionally have asserted the violation of any of those several duties—notice, forwarding of suit papers, and cooperation in the defense of the claim—as grounds for disclaiming liability on the policy, either to defend a claim brought against the insured or to indemnify the insured with respect to any judgment entered on the claim.

We pointed out in *Fid. & Cas. Co. v. McConnaughy, supra,* 228 Md. 1, 179 A.2d 117, that two lines of authority had developed regarding the nature and effect of those clauses. One line, which we characterized as a "formalistic, technical view," held that policy provisions for notice, forwarding of suit papers, and cooperation were conditions precedent to liability "and that a breach by the insured discharges the insurer regardless of prejudice ." *Id.* at 12, 179 A.2d at 123. The competing view was that those provisions were conditions subsequent and that "prejudice must be shown by the insurer, if it is to be absolved." *Id.* As a matter of Maryland common law, we did not appear to adopt either view completely. Rather, in a number of cases, we drew distinctions both between the requirements of notice and cooperation and between non-cooperation based on false statements made by the insured and non-cooperation based on the insured's failure to attend depositions, hearings, or trial, or to assist in giving or obtaining evidence regarding the accident or claim. Unfortunately, when dealing with a failure to cooperate, as opposed to a failure to notify, we did not always make entirely clear whether we viewed non-prejudicial conduct by the insured as not constituting a breach of the policy in the first instance or, even if it were a breach, as not justifying a disclaimer of coverage.

In *Indemnity Ins. Co. of N.A. v. Smith,* 197 Md. 160, 78 A.2d 461 (1951), we dealt with a failure to cooperate based on the insured's disappearance during the litigation, which, in the particular case, we regarded as a wilful failure to attend trial

and assist in giving and obtaining evidence. The insured had notified the insurer of the accident, forwarded the suit papers, and given a detailed report to the insurer, but had then disappeared without leaving a forwarding address and was not able to be located. We noted, in general, that "an insured should not be charged with a breach of the co-operation clause merely because of immaterial and unsubstantial failures," and that it was well-settled that "to relieve an insurer of liability on the ground of lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect." *Id.* at 164, 78 A.2d at 463 (citing *State Automobile Mutual Ins. Co. v. York,* 104 F.2d 730 (4th Cir.1939)). A different rule applied, however, when the non-cooperation was based on the failure to attend hearings and trials and assist in securing and giving evidence. "The failure of the insured to comply with this condition," we held, "precludes recovery by the person injured from the insurer, even though co-operation might not have defeated the plaintiff's claim for damages." *Id.* We added that, if an insured "refuses to give the information which the insurer needs to make the defense, or absents himself so that his testimony cannot be obtained, recovery on the policy should be denied, if the insurer acts with good faith and diligence." *Id.* at 164–65, 78 A.2d at 463 (citing *Hynding v. Home Accident Ins. Co.,* 214 Cal. 743, 7 P.2d 999 (1932)).

In *Fid. & Cas. Co. v. McConnaughy, supra,* 228 Md. 1, 179 A.2d 117, the issue was whether the insurer could disclaim for non-cooperation based on the insured's having given false information—that there were two eyewitnesses who would testify that the insured was driving properly and that the accident was the fault of the plaintiff—which led the insurer to reject a settlement offer from the plaintiff. Although we cited *Indemnity Ins. Co.* in our opinion, we did not mention the distinction drawn in that case between non-cooperation based on false statements and that based on failure to attend trial or give evidence and looked only to the language involving discrepancies in statements. We noted the Maryland cases holding that "where there has been a failure to notify the

insurer of an accident, or to forward it suit papers, or a breach of a policy provision not to assume liability, no prejudice in fact need be shown before the insurer could disclaim liability" but stated, with respect to the cooperation clause, that it is included in liability insurance policies "so that the insurance company will not be prejudiced in investigation and defense at trial" and that "[i]t should be construed and applied to effectuate its purpose." *Id.* at 13, 179 A.2d at 123.

In *Watson v. U.S.F. & G. Co.*, 231 Md. 266, 189 A.2d 625 (1963), the insured failed to give prompt notice of the accident. He notified the company when, about a month after the accident, he received a letter from an attorney for the claimant. Although the insurer commenced an investigation thereafter and "assembled as much information concerning the accident as was then available," (*id.* at 270, 189 A.2d at 626–27), the company eventually disclaimed coverage on the ground of late notice. The insured filed a declaratory judgment action to determine the insurer's obligations. We concluded that prompt notice was a condition precedent to an action on the policy, and that, although the condition could be waived and was subject to an estoppel defense, the insurer was not required to show any actual prejudice in order to be relieved from its obligation. A contrary approach, we said, was "not in accord with the Maryland decisions, nor with the weight of authority elsewhere in this country." *Id.* at 272, 189 A.2d at 627.

Thus, by 1963, it appeared clear that, if the insured failed to give proper notice of the accident or of a claim or failed to forward suit papers in a timely manner, the insurer could disclaim coverage without a showing of prejudice—the obligation was effectively treated as a condition precedent to an action on the policy—but that the insurer could not disclaim based on the insured's failure to make truthful statements regarding the accident and claim absent a showing of prejudice. Whether the distinction drawn in *Indemnity Ins. Co.* between non-cooperation based on the giving of untruthful statements and that based on failure to attend hearings and give evidence remained intact is not altogether clear. We

seem to have glossed over it in *McConnaughy. See also Home Indemnity Co. v. Walker,* 260 Md. 684, 688, 273 A.2d 429, 431 (1971).

The General Assembly responded to the *Watson* case, and also, perhaps, to the *Indemnity Ins. Co.* case, by enacting, in its 1964 session, what is now § 19–110 of the Insurance Article. *See St. Paul Fire & Marine Ins. v. House,* 315 Md. 328, 332, 554 A.2d 404, 406 (1989). As presently worded, the statute provides:

> "An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer."

Although the law remains plagued, to some extent, with debate over whether (1) an insured's conduct is sufficiently egregious to constitute a breach of the policy, and (2) such conduct, even if it does constitute a breach, nonetheless resulted in actual prejudice to the insurer, the statute at least has wiped away any basic distinctions with respect to whether prejudice is required. An insurer may not disclaim coverage for either lack of notice or failure to cooperate unless it demonstrates that the deficiency has resulted in actual prejudice to the insurer. Anything to the contrary in our pre 1964 case law is no longer valid.

In the trial court, Allstate contended that State Farm had failed to show actual prejudice because (1) it could have done more to avoid the preclusion order, and (2) it could have done more at trial of the underlying tort action. Those claims were rejected by the Circuit Court and are no longer before us. Allstate now concedes that the trial court was correct in finding some measure of actual prejudice accruing from Kirby's non-cooperation and allowing State Farm to disclaim to

the extent of that prejudice. We are concerned only with whether the court was correct in so limiting the disclaimer.

## The Standard

■ Our first quest, at Allstate's urging, is to devise a standard for determining when actual prejudice has been shown, for only then can we have a basis for judging the extent of the prejudice suffered by State Farm in this case. It asks that we adopt the standard stated, in *dicta,* by the Court of Special Appeals in *Harleysville Ins. Co. v. Rosenbaum,* 30 Md.App. 74, 84, 351 A.2d 197, 202 (1976): "In order to show 'actual prejudice,' it is necessary to show an act on the part of the insured 'which had or could have had any effect upon the jury which induced them or in any way caused them to render the verdict against himself.' Stated another way, the insurer must establish a substantial likelihood that if the cooperation or notice clause had not been breached, the insured would not have been held liable." (Quoting in part from *United States Fid. & Guar. Co. v. Williams,* 148 Md. 289, 307, 129 A. 660, 667 (1925)).[2] That standard—of substantial likelihood that, had the breach not occurred, the result would have been different—Allstate argues, is consistent with the standard normally applied in determining the materiality of newly discovered evidence for purposes of granting new trials—is there a "substantial or significant possibility that the verdict of the trier of fact would have been affected?" *See Yorke v. State,* 315 Md. 578, 556 A.2d 230 (1989).

State Farm points out that, in *Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 482 A.2d 503 (1984), *cert. denied,* 302 Md. 289, 487 A.2d 292 (1985), the Court of Special Appeals rejected that standard as being too strict, as requiring the insurer to prove a negative. In *Washington,* the

---

**2.** That language is regarded as *dicta* because the declaratory judgment, from which the appeal was taken, was rendered before the underlying tort action was tried, and the holding in the case was that the declaration of prejudice was premature. The insurer still had the right and ability to defend the claim. The declaratory judgment with respect to prejudice was vacated for that reason.

insurer did not receive notice of the suit until after a verdict had been rendered and, in that context, it found the *Harleysville* standard to be inapposite. "It is impossible" the *Washington* court concluded, "for the carrier to demonstrate to the court what witnesses it might have discovered, what defense it might have made, and what disposition it might have reached in settlement if it had received notice before the verdict was rendered in this case." *Id.* at 295–96, 482 A.2d at 507. *Compare, however, Scottsdale Ins. v. American Empire Surplus Lines,* 791 F.Supp. 1079 (D.Md.1992).

There have been a number of attempts at devising a standard for determining actual prejudice in failure of notice or cooperation cases, ranging, on one end, from a requirement that the insurer demonstrate that, but for the breach, the result at trial either *would* have been different or, as in the *Harleysville* approach, a substantial likelihood that the result would have been different, to a *"per se "* approach, that the insured's failure itself establishes prejudice. The problem that we see with many of the approaches, as articulated, is that they tend to be keyed to the facts or circumstances of the particular case and do not take sufficient account of the very different circumstances, and thus the very different kinds of prejudice, that can be presented by breaches of these provisions. It is very difficult to fashion a workable "one size fits all" standard.

If an insurer is not given prompt notice of the accident or of the claim, it may (or may not) lose the ability to discover relevant evidence, particularly the identity of witnesses and their contemporaneous recollections. As we pointed out in *Warren v. Hardware Dealers Mutual Fire Ins. Co.,* 244 Md. 471, 224 A.2d 271 (1966) and as the *Harleysville* court opined, whether that lost opportunity results in prejudice cannot really be known, if at all, until after trial and verdict in the tort action.[3] Even then, there may be a considerable element

---

3. Given that the declaratory judgment action was tried before damages were ascertained in the tort action, the question of prematurity was raised in the trial court, but not found persuasive. The court noted

of speculation involved in attempting to measure whether there was *actual* prejudice to the insurer: was there any other relevant and credible evidence to be discovered; what efforts did the insurer make, after notice, to discover that information and develop a defense; and how credible would any such information have been had it been discovered and presented? The immediate problem in that setting is the difficulty in determining what helpful evidence was lost to the insurer; how does the insurer prove what it might have discovered? That was the concern that led the *Washington* court to reject application of the standard stated in *Harleysville.*

When a disclaimer is based on a failure of the insured to appear for trial, at least the potential scope of the loss is ascertainable; it is the insured's *viva voce* testimony—the ability of the jury to hear the insured's side of the story from his or her own lips. Even in that setting, however, circumstances governing the reality of prejudice may differ: was the jury entirely without the benefit of the insured's side of the story or were there other witnesses or exhibits in support of a defense; how helpful or credible would the insured's testimony have been in light of the other evidence? *See United States Fid. & Guar. Co. v. Perez,* 384 So.2d 904, 905 (Fla. App.), *petition denied,* 392 So.2d 1381 (Fla.1980) (insured's testimony would not have been beneficial, as it would have established insured's negligence); *Montgomery v. Preferred Risk Mutual Insurance Co.,* 17 Utah 2d 333, 411 P.2d 488 (1966) (no prejudice from insured's failure to attend trial where his pre-trial deposition was available but not used), but

---

that, because there had been a finding of liability against Kirby and no one disputed that Gregorie was injured and would likely recover substantial damages, no purpose would be served by waiting. Neither party has complained about that decision, so it is not an issue in this appeal. We suggest, however, that, if the only question had been whether State Farm would be liable to indemnify Kirby, up to the policy limit, for any judgment rendered, the court should have waited, as juries sometimes do surprising things. That was not the only issue, however. In its complaint, State Farm sought a declaratory judgment that it was not obliged to defend Kirby in the tort action, and that *did* need to be resolved before the trial on damages.

*compare Berry v. Truck Insurance Exchange,* 265 Or. 130, 508 P.2d 436 (1973). Most courts, at least in recent times, have rejected a *per se* rule that mere absence from trial, even if wilful and even if the insurer has done what it reasonably could do to produce the insured, suffices on its own to establish, or to create a presumption of, prejudice. *See Nationwide Ins. Co. v. United States Fidelity & Guaranty* Co., 304 A.2d 283 (D.C.1973) (applying Maryland law); *Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); *MFA Mut. Ins. Co. v. Cheek,* 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809 (1977); *Western Farm Bur. Mut. Ins. Co. v. Danville Constr. Co.,* 463 S.W.2d 125 (Ky.1971); *Hendrix v. Jones,* 580 S.W.2d 740 (Mo.1979).

If the insured has already given a statement describing the accident, the nature of the lost evidence is known, and the uncertainty focuses on the effect and credibility of that evidence. That was the setting in *State Farm Mut. Auto. Ins. v. Davies,* 226 Va. 310, 310 S.E.2d 167 (1983). The insured and her brother, who was a passenger in the insured's car, both gave exculpatory statements to the insurer after the accident—statements that laid the blame on the plaintiff. They subsequently failed to appear for trial, however. In determining the validity of the insurer's consequent disclaimer, the Virginia court had before it at least three proposed standards—one that imposed on the insurer the burden of proving that the insured's appearance at trial "would have produced a different result," an allied one that, like *Harleysville,* would require the insured to show a "substantial likelihood that the trier of fact would have found in the insured's favor," and one, on the other end of the spectrum, that would make the insured's absence prejudice *per se.* The court rejected both extremes and adopted a middle ground:

> "[I]n an action on the policy, when the insurer shows that the insured's willful failure to appear at the original trial deprived the insurer of evidence which would have made a jury issue of the insured's liability and supported a verdict in his or her favor, the insurer has established a reasonable likelihood the result would have been favorable to the

insured and has carried its burden of proving preju-
dice . . . . "

*Id.* at 170.

The court noted that the insured's version of the accident
was in direct conflict with that of the plaintiff and concluded
that it was not inherently incredible. Had the jury accepted
her version, it would have returned a verdict in her favor—a
verdict that would have been supported by the evidence. By
wilfully failing to attend and testify and assist in securing her
brother's testimony, the court held, she deprived the insurer
of the very evidence necessary to make a jury issue of her
liability and thereby clearly prejudiced the insurer in its
defense, which justified its disclaimer.

Other courts have adopted a similar kind of middle ap-
proach when dealing with a failure to appear at trial, although
they have articulated it differently. *See Brooks v. Haggard,*
481 P.2d 131, 134 (Colo.App.1970), rejecting a *per se* rule of
prejudice and holding that "if, after consideration of all factors
involved, it appears that the presence of the insured or his
testimony was so potentially valuable as to have materially
affected the outcome of the trial, then his nonappearance is
regarded as a material or prejudicial breach of the policy."
*See also Berry v. Truck Insurance Exchange, supra,* 265 Or.
130, 508 P.2d 436, 438 (prejudice found from failure of insured
to appear at trial where insured was the "principal, if not the
only, favorable witness available to the defense"); *Dietz v.
Hardware Dealers Mut. Fire Ins. Co.,* 88 Wis.2d 496, 276
N.W.2d 808 (1979); *Anderson v. Kemper Ins. Co.,* 128 Mich.
App. 249, 340 N.W.2d 87 (1983).

Although we do not concur entirely with the *Davies* stan-
dard as articulated by the Virginia court, in that we do not
agree that establishment of "a jury issue of the insured's
liability" necessarily equates to the establishment of "a rea-
sonable likelihood the result would have been favorable to the
insured," we believe that the proper focus should be on
whether the insured's wilful conduct has, or may reasonably
have, precluded the insurer from establishing a legitimate jury

issue of the insured's liability, either liability *vel non* or for the damages awarded. We think that standard represents the most appropriate balance. It does not require that the insurer meet what the Applemans regard as the "almost insurmountable burden of proving that the verdict was the result of the lack of cooperation." 8 JOHN AND JEAN APPLEMAN, INSUR-ANCE LAW AND PRACTICE, § 4773 at 228 (1981). It does require, however, that the insurer show that the failure of cooperation has, in a significant way, precluded or hampered it from presenting a credible defense to the claim.

### The Prejudice Here

■ The prejudice here, of course, goes beyond merely the loss of Kirby's testimony. By reason of her wilful failure to cooperate in providing discovery—her refusal to attend her twice-scheduled deposition or cooperate in a further rescheduling of it, her refusal to assist in responding to properly filed interrogatories and demands for documents—and her refusal to attend trial, State Farm was precluded from offering *any* evidence in defense of the claim. It is not a question, then, of whether, with or without her intransigent conduct, State Farm may have been able to develop some other helpful evidence; even if it had been able to do so, State Farm would have been unable to present it. Indeed, helpful evidence, in the form of Ms. Weiner's testimony, *did* exist, but, due to Kirby's conduct, it was unusable. Unquestionably, under a *Davies*-type standard, there was actual prejudice.

■ We come, then, to the nub of the case—the nature and extent of the prejudice. The trial court adopted the *Harleysville* standard, requiring the insurer to establish a substantial likelihood that, if the cooperation clause had not been breached, Kirby would not have been held liable, and, as a result, decided that it, "sitting in place of the jury as the finder of fact, can consider as to what evidence would have been admissible at trial *and what result would have occurred had this evidence been introduced in the liability trial.*" (Emphasis added). On that basis, it concluded that the likelihood was that, had the jury heard from Kirby and Weiner, it would have

found Kirby and Winston jointly liable. The Court of Special Appeals rejected that conclusion because it was based on an impermissible standard and because it "requires speculation about the missing testimony, and how a fact finder would react to same." *State Farm v. Gregorie, supra,* 131 Md.App. at 335, 748 A.2d at 1099.

The parties join issue over whether the "actual prejudice" requirement of § 19–110 permits a parsing of prejudice, but, on the record in this case, that is really not the issue. Even if, as Allstate asserts, the statute permits disclaimer only to the extent that the insurer can establish actual prejudice (*see Fid. & Cas. Co. v. McConnaughy, supra,* 228 Md. 1, 179 A.2d 117), in this case, based on the standard we believe is appropriate, the prejudice was complete. The evidence lost to State Farm as a result of the preclusion order was (1) Kirby's testimony that she was driving at a normal speed but was concerned about ice on the road, (2) Weiner's testimony that *she* was able to see the Kirby car, that it had hazard lights on, and that she was able to avoid a collision, (3) a weather report indicating the cold temperature, which, in light of other evidence that the roadway was wet or damp, may have supported Kirby's testimony that there was ice, and (4) photographs of the damage to the Kirby vehicle. As in *Davies,* Kirby's testimony, though contradicted in some important respects by that of the plaintiffs and Weiner, would have created a genuine issue with respect to how fast she was traveling. There is nothing in the record to suggest that her statement, though disputed, was inherently unreliable. If the jury had heard and credited that testimony, and heard and credited as well Weiner's testimony that the Kirby car was visible and had on hazard lights, it could reasonably have found no negligence at all on Kirby's part. It could reasonably have found that Winston, distracted by the car to his right, simply was not paying attention, as Gregorie, herself, charged, and therefore did not see what clearly was there to be seen.

The prejudice was not in terms of how the jury would actually have viewed this evidence, whether the jury would have found it believable or not believable, for that is purely a

matter of speculation. The prejudice lies in the fact that there was a credible defense to be presented and that Kirby's noncooperation precluded State Farm from even presenting that defense.

JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE JUDGMENT OF CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THAT COURT FOR ENTRY OF DECLARATORY JUDGMENT IN CONFORMANCE WITH THIS OPINION; PETITIONER TO PAY THE COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS.