UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICIA BALL,

　　　　　*Plaintiff-Appellant,*

v.

NCRIC, INCORPORATED, a/k/a
National Capital Reciprocal
Insurance Company,

　　　　　*Defendant-Appellee.*

No. 01-1716

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-00-832-AW)

Argued: April 2, 2002

Decided: July 10, 2002

Before WILKINS, TRAXLER, and GREGORY, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Gregory Charles Mitchell, Washington, D.C., for Appellant. Lee Thomas Ellis, Jr., BAKER & HOSTETLER, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Stephen C. Leckar, BUTERA & ANDREWS, Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Patricia Ball appeals a district court order granting summary judgment against her and denying her cross-motion for summary judgment in her third-party beneficiary action against liability insurer NCRIC, Incorporated. We reverse and remand for further proceedings.

### I.

NCRIC insures doctors against medical malpractice claims. In 1987, NCRIC insured Dr. George E. Daniel, a Maryland physician, under a "claims-made" policy. The policy required NCRIC to indemnify Daniel for "[a]ll sums which the insured shall become legally obligated to pay as damages, to which this insurance applies, because of any claim or claims first made against the insured during the policy period caused by a medical incident." J.A. 109-10. It also obliged NCRIC "to defend any suit against the insured seeking damages because of [an] injury." *Id.* at 110.

From April to November 1987, Daniel treated Ball for migraine headaches and depression. During home visits, he would administer to Ball a variety of drugs, none of which had been prescribed to her. These drugs would put Ball into a state of stupor, during which time Daniel would sometimes coerce her into having sex with him. Ball also became addicted to the drugs, causing her severe health problems.

Daniel was arrested in November 1987 on separate charges of illegally selling narcotics. He was arraigned and released on $200,000 bond, after which he fled the country and did not return for his February 22, 1988 guilty plea date. Daniel was subsequently apprehended in May 1991.

Ball learned of her potential malpractice claim in late 1987. Her attorney spoke with a NCRIC claims representative on December 14, 1987 and the following day prepared and had hand-delivered a letter advising NCRIC of Ball's medical malpractice claim against Daniel. As a result of this notice, NCRIC telephoned Daniel at his home and at his office in January 1988, but the phones were disconnected. NCRIC then advised Ball's counsel in May 1988 that it would investigate the claim. On approximately May 27, 1988, NCRIC sent letters requesting Daniel's cooperation to three different addresses, including one in Canada that Daniel had given NCRIC. By this time, however, Daniel was a fugitive, and NCRIC received no response.

Almost four years later, in April 1992, Ball filed a formal arbitration claim before the Maryland Health Claims Arbitration Office (HCA). Nothing happened regarding her claim for over a year, but on July 14, 1993, Ball's attorney wrote NCRIC informing it that Daniel had been served on April 3, 1993. Counsel also provided NCRIC with a claim statement and affidavit of service filed with the HCA panel on April 28, 1993 showing Daniel's then-current address in a federal prison in Seagoville, Texas. After receiving the letter, NCRIC did not contact Daniel, nor did it take any other action with regard to the claim other than to maintain that the claim was made outside Daniel's policy period.

In March 1995, Ball moved for an order of default against Daniel, and she was awarded a default judgment on September 24, 1996. Ball then instituted this action against NCRIC to collect under Daniel's liability insurance policy. NCRIC raised several defenses, including that Ball's claim against Daniel fell outside of the policy period, that Daniel breached his duties to notify NCRIC of a claim and to cooperate with its investigation, and that the damage award was the result of an intentional tort and therefore outside the scope of the policy. Both parties moved for summary judgment.

The district court granted NCRIC's motion and denied Ball's. The court concluded that as a matter of Maryland law NCRIC made a good faith effort to investigate Ball's claim when it sent letters to Daniel at all of his known addresses, but that Daniel wilfully refused to cooperate. The court also concluded as a matter of law that NCRIC was prejudiced by Daniel's noncooperation because had he cooper-

ated, he might have provided testimony that would have demonstrated either that he was not liable to Ball or that NCRIC had no duty to indemnify Daniel.[1] Accordingly, the district court ruled that Daniel's noncooperation justified NCRIC's denial of coverage.

## II.

## A.

Ball contends that the district court erred in ruling as a matter of law that NCRIC was prejudiced by Daniel's noncooperation. We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Ball. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Maryland law provides that a liability insurer may not deny coverage based on the insured's breach of a cooperation clause unless the insurer proves that it was prejudiced by the breach.[2] *See* Md. Code Ann., Insurance § 19-110 (1997); *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 767 A.2d 831, 840 (Md. 2001). In this regard, the insurer must establish that the insured's willful failure to cooperate "has, or may reasonably have, precluded the insurer from establishing a legitimate jury issue of the insured's liability." *Allstate*, 767 A.2d at 843.

Here, the district court erred in ruling as a matter of law that NCRIC met that standard. NCRIC has not demonstrated that Daniel's failure to cooperate while he was a fugitive hindered its ability to defend itself against Ball's suit. Even assuming that Daniel's cooperation might aid NCRIC's defense, there is nothing in the record to

---

[1]The district court noted that Daniel could have stated that Ball consented to have sex with him.

[2]The parties agree that Maryland law applies.

show that the value of such assistance diminished between 1988 (when he became a fugitive) and 1993 (when NCRIC was informed he had been apprehended). Moreover, there is no evidence that Daniel would not have cooperated in NCRIC's investigation had NCRIC contacted him when it learned he had been apprehended. Accordingly, because NCRIC has not demonstrated prejudice as a matter of law from any event other than its own decision not to investigate Ball's claim once it located Daniel, Daniel's failure to cooperate while he was a fugitive does not justify NCRIC's denial of coverage. *See Gen. Accident Ins. Co. v. Scott*, 669 A.2d 773, 780 (Md. Ct. Spec. App. 1996) ("An insurer cannot assert prejudice with regard to its ability to conduct an investigation that it never even tried to conduct."); *see also* 14 *Couch on Insurance* § 199:21 (3d ed. 1999) (explaining that liability insurer cannot deny claim based on insured's noncooperation unless insurer has exercised reasonable diligence in seeking insured's cooperation).

B.

NCRIC argues as an alternative basis for affirming the grant of summary judgment that, as a matter of law, it was prejudiced by Daniel's failure to notify it of Ball's claim. *See* Md. Code Ann., Insurance § 19-110 (providing that insurer may not deny coverage based on insured's breach of duty to provide notice of claim unless insurer proves prejudice from breach). Ball contends that her own notice to NCRIC prevented any prejudice. We agree with Ball.

Ball forecasted evidence that her attorney telephoned NCRIC regarding her claim on December 14, 1987 and had a follow-up letter delivered the next day. Indeed, NCRIC's May 27, 1988 letters to Daniel requesting his cooperation confirm that NCRIC was not prejudiced by any notice failure on Daniel's part. *See* J.A. 137 (letter from NCRIC to Daniel stating that "NCRIC has been notified of a claim against you for alleged negligent treatment of [your] patient, Patricia [Ball]"). Accordingly, we reject NCRIC's suggestion that the grant of summary judgment can be affirmed on this basis.

C.

NCRIC further maintains that the grant of summary judgment should be affirmed because Ball's claim was made outside of the pol-

icy period. NCRIC notes that Ball's HCA action was filed in 1992 and Daniel's policy expired January 1, 1988. Ball responds that claims are considered to be made under the policy when NCRIC receives written notice of the claim, which here was December 15, 1987. Again, we agree with Ball.

As is relevant here, the policy obligates NCRIC to indemnify Daniel for "[a]ll sums which the insured shall become legally obligated to pay as damages, to which this insurance applies, because of any claim or claims first made against the insured during the policy period." *Id.* at 109-10. The policy provides that "[a] claim shall be considered to be first made when [NCRIC] first receives written notice of the claim or occurrence." *Id.* at 111.

NCRIC received written notice of the claim on December 15, 1987 in the form of the letter from Ball's attorney confirming his earlier telephone conversation concerning Ball's medical malpractice claim against Daniel.[3] NCRIC argues that a claim is not considered to be made when NCRIC first receives written notice of the claim if the notice was provided by a third party rather than by the insured. NCRIC's interpretation is at odds with the unambiguous language of the policy, however. *See Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 203 (Md. 2001) (explaining that if the language of an insurance policy is unambiguous, it is to be given its plain meaning). Although the policy does obligate Daniel himself to notify NCRIC of any occurrence, claim, or suit to which the policy applies, this obligation appears in a separate section of the policy from the language concerning when a claim is considered to have been made.

NCRIC also apparently argues that there could have been no claim for Ball to give notice of in 1987 because the terms "claim" and "suit" are synonymous and Ball had not yet filed a lawsuit in 1987. We disagree. Although "claim" and "suit" are not defined in the policy, the most common meaning of the noun "claim" is "demand." *Webster's 3d New Int'l Dictionary* 414 (1981); *see Bushey v. N. Assurance Co. of Am.*, 766 A.2d 598, 600 (Md. 2001) (explaining that words in an insurance policy are to be given their ordinary meaning unless another

---

[3]NCRIC does not argue in its brief that the contents of the December 15 letter were insufficient, and we do not decide whether they were.

meaning is indicated). And, the language of the policy further suggests that a claim can exist before a lawsuit is filed. *See, e.g.*, J.A. 110 (obligating NCRIC to defend a "suit" against the insured but giving NCRIC authority to settle any "claim or suit" with the insured's consent).

### III.

Ball also argues that the district court erred in denying her cross-motion for summary judgment. Because the denial of Ball's motion is an unappealable interlocutory order, we decline to consider her challenge to that ruling.

An order denying a motion for summary judgment is generally an unappealable interlocutory order. *See O'Connor v. United States*, 956 F.2d 48, 52 (4th Cir. 1992). Such an order does not become appealable merely by virtue of our review and reversal of a grant of summary judgment to the opposing party. *See id.* This court may have jurisdiction to review an otherwise unappealable order if (1) it is inextricably intertwined with an appealable order or (2) consideration of the unappealable order is necessary to ensure meaningful review of the appealable order. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995). Neither circumstance applies here, however. The orders are not inextricably intertwined since determining Ball's entitlement to summary judgment would require us to resolve NCRIC's contention that the policy does not provide coverage because Ball's damage award was the result of an intentional tort. And, review of the denial of Ball's summary judgment motion is clearly not necessary to ensure meaningful review of the grant of NCRIC's motion.

### IV.

In sum, because NCRIC failed to establish as a matter of law that its own lack of reasonable diligence in investigating Ball's claim was not the cause of its inability to obtain Daniel's cooperation, the district court erred in granting summary judgment to NCRIC on the basis of Daniel's failure to cooperate. For this reason and because NCRIC's other asserted grounds for affirmance are without merit, we reverse the grant of summary judgment to NCRIC and remand for further proceedings.

*REVERSED AND REMANDED*