948 A.2d 1

UNION UNITED METHODIST CHURCH, INC.

v.

Robert M. BURTON, et al.

No. 85, Sept. Term, 2007.

Court of Appeals of Maryland.

April 11, 2008.

Reconsideration Denied June 10, 2008.

**544**

Benjamin J. Woolery, McGill & Woolery, Upper Marlboro, for plaintiff.

John T. Prisbe, Venable LLP, Baltimore, for defendant.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE (retired, specially assigned) and DALE R. CATHELL (retired, specially assigned), JJ.

CATHELL, J.

Union United Methodist Church, Inc., petitioner, filed a declaratory judgment action in the Circuit Court for Prince George's County against Robert M. Burton, et al., respondents, seeking to have that court declare the proper boundary line between two parcels of land owned by the respective parties. After that court rendered its judgment, petitioner filed an appeal to the Court of Special Appeals, in which it presented one question:

"Did the trial court err in its ruling that appellees' lot known as 'Parcel 146' extended 64 feet along Elm Street in Upper Marlboro, Maryland, particularly in that the Com-

plaint below contained a prayer for a Declaratory Judgment?"

Simply stated, this case concerns one factual issue: the location of the boundary line between two parcels of property.

At the intermediate appellate level, petitioner argued that "At a minimum, a Remand is required." In support of that proposition, petitioner further argued that "With the proceedings below actually *lacking* a 'Declaratory Judgment,' it is not the place for an appellate court to determine the factual disputes that have come before it on the record provided."

The Court of Special Appeals remanded the case to the trial court, but for a limited purpose. It stated:

"Similarly, in the present case, the circuit court issued an oral opinion defining the rights and obligations of the parties, and the oral opinion was transcribed, but the record does not show that the opinion was attached to the order that was issued to the parties. Consequently, we shall remand the case for the court to amend its order by attaching the written declaratory judgment."

The trial court delivered an oral declaration and rendered a judgment from the bench for the respondents, Robert M. Burton, et al., and directed the Court Reporter to transcribe his oral opinion. The Court stated that the transcription when prepared was to be considered the written declaration of the rights of the parties. Petitioner argues that that was insufficient to satisfy the requirements of the Declaratory Judgment Act.

The Court of Special Appeals did acknowledge the oral opinion of the trial court and addressed it. It, in essence, affirmed, that oral opinion although the intermediate appellate court remanded the case in order to attach that oral opinion to the trial court's judgment. The Court of Special Appeals reiterated the relevant part of the oral opinion of the trial court as follows:

"'I [the trial court judge] have had an opportunity to examine all of the exhibits that have been introduced, but find two exhibits to be the most [sic] before me, I find the

testimony of Mr. Leininger, Mr. Ramsey, and Mr. Roshan[1] more persuasive than testimony of the—testimony offered by the plaintiffs.

    " 'Having made the findings that I have in this oral opinion, I grant judgment to the defendants on Count 2, the action to quiet title, I grant judgment to the defendants on Count 3, the action of ejectment, and I declare the rights of the parties to be that parcels numbered 144, with the street address of 14505 Elm Street and parcel number 146 with the street address of 14508 Elm Street both have 64 feet of frontage on Elm Street.' " (Footnote added.)

After the trial judge rendered the oral opinion, he and petitioner's counsel engaged in the following conversation:

    " 'THE COURT: ... Are there any further rights that plaintiff feels that I need declare in this action?

    [THE CHURCH'S COUNSEL]: I think the declaratory judgment statute called for a written declaration.

    THE COURT: Well, I'll ask that the court reporter type the oral opinion that I've given and when I receive it, I'll sign an order indicating that that is in fact my opinion in the case.

    Anything further from Plaintiff?

    [THE CHURCH'S COUNSEL]: The Court has issued its ruling[?]

    THE COURT: Now, I don't ask you to agree with it, I'm just asking if there's anything further.

---

**1.** Mr. Roshan and Mr. Ramsey testified as witnesses to surveying issues. Mr. Ramsey was not a registered surveyor, but a supervisor who worked for W.L. Meekins, Inc., a surveying company. Mr. Roshan is identified as a surveyor for the same company. Mr. Leininger was identified as a "surveying professional" that reviewed the work of the various professionals testifying in the case. Roshan, Ramsey and Leininger were expert witnesses for the respondents. The trial judge was, at this point in his opinion, assessing the credibility of the expert witnesses. He credited the testimony of the experts for the respondents more favorably than the testimony of petitioner's expert witnesses.

[THE CHURCH'S COUNSEL]: I think the Court has ruled on all the counts.' "

On January 26, 2006, a copy of the transcript was docketed and an order was issued that stated:

"FOR THE REASONS stated in the oral opinion given on January 13, 2006, it is this 23rd day [2] of January, 2006, by the Circuit Court for Prince George's County, Maryland,

"ORDERED, that judgment for the Defendants be entered in Counts II and III, and it is further,

"ORDERED, that the rights of the parties are declared in the oral opinion."

In its Petition for Certiorari to this Court, petitioner presented two questions:

"1. Is it desirable, or in the public interest, for this Court to address whether oral opinions being transcribed and attached to sheets of paper titled 'Order' are acceptable, as a matter of public policy, in actions under Maryland's Declaratory Judgment Act[?]

"2. Is it desirable, or in the public interest, for this Court to define and determine the parameters of judicial discretion under Maryland's Declaratory Judgment Act in conjunction with the judicial power found at Section 14–111 of Maryland's Real Property Article for determining the location of a disputed boundary line[?]" [3]

We issued certiorari to consider these two questions. *Union United v. Burton*, 402 Md. 352, 936 A.2d 850 (2007). We fail to see where the second question presented in the Petition has any relevance to the problem present in this case, in that the trial court judge did what Md.Code (1974, 2003 Repl.Vol.), § 14–111 of the Real Property Article required him to do.

Section 14–111, in relevant part, provides as follows:

---

**2.** We presume that the difference in the date of the order and the date it, and the transcript, were docketed merely reflects a delay by the clerk's office in filing the documents.

**3.** These same two questions were presented in petitioner's brief.

" § 14–111.  Survey markers.

. . .

(c) *Boundary lines.*—If there is a dispute over any boundary line or if the bounds mentioned in a document are lost, on petition of any party in interest, the circuit court of the county where the property lies may establish the boundary lines or the location of the missing bounds.  The court may appoint engineers, surveyors, or other experts to assist the court in its determination, and the fees of the experts are costs in the proceeding."

As we shall explain, *infra,* the trial judge did as the statute requires, *albeit* not as specifically as we would like, but, nonetheless, as Judge Kenney pointed out for the Court of Special Appeals, he provided the method for the establishment of a clear boundary line between the subject properties.

Petitioner takes issue as to where (and how) that boundary line was established, not that the trial court failed to exercise discretion, but that it exercised it wrongly or insufficiently. In that respect, respondents assert that the petitioner failed to preserve that issue for review by not raising it when invited to do so by the trial court.  As noted above, when the trial court inquired if there was anything else for the court to rule upon, petitioner failed to bring the specific assertions it now makes to that court's attention.

Because of the rather unique nature of this case and the present circumstances, and because these types of cases invariably impact on questions of title to real property (sometimes impacting on title many years, and many owners, later), we shall address the last issue presented even though we shall hold that the judgment rendered at the trial level was not sufficient to comply with most of our cases requiring a written declaration in declaratory judgment actions.  We note, additionally, that Judge Kenney's opinion for the Court of Special Appeals in relation to the trial court's location of the boundary line and the proper priorities in the establishment of property

lines was correct. Therefore, we shall adopt much of his reasoning on that issue.

The first question, however, we shall discuss at some length is the proper rendering of declaratory judgments, a recurrent issue raised in appeals, i.e., what are the proper methods for rendering "written" judgments in Declaratory Judgment actions?

## DISCUSSION

In an opinion rendered after the Court of Special Appeals' opinion in the case at bar, *Bowen v. City of Annapolis*, 402 Md. 587, 937 A.2d 242 (2007), decided on December 14, 2007, the judgment or order rendered by the trial court was:

> " 'In accordance with the foregoing memorandum opinion, and upon consideration of the arguments of the parties and the record from the administrative agency below, it is on this 23rd day of December, 2005, by the Circuit Court . . .
>
> **ORDERED,** that the decision of the Civil Service Board of the City of Annapolis be and hereby is REVERSED; and it is further,
>
> **ORDERED,** that the case be and hereby is REMANDED to the Annapolis City [sic] Service Board for further proceedings not inconsistent with this opinion.' "

*Bowen,* 402 Md. at 608–09, 937 A.2d at 254. Judge Greene, for the Court, held that the above language was insufficient to comply with the requirement that declaratory judgments be declared in writing. He wrote for the Court as follows:

> "This Court, on numerous occasions, has reiterated that 'whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made.' *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959); *accord Bushey v. Northern Assurance Company of America,* 362 Md. 626, 651, 766 A.2d 598, 611 (2001); *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995); *Christ v. Maryland Dep't of Natural Resources,* 335

Md. 427, 436, 644 A.2d 34, 38 (1994). To do otherwise we have held is error.... In *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001), we explained this requirement further:

'[W]hen a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, *must be in writing.* It is not permissible for the court to issue an oral declaration.... *When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties.... Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately* ....' " (Some interior citations omitted.)

*Bowen,* 402 Md. at 608–09, 937 A.2d at 254–55.

In *Jackson v. Millstone,* 369 Md. 575, 801 A.2d 1034 (2002), we stated:

"Prior to addressing the substance ... we shall comment upon a procedural error committed by the Circuit Court....

"Even if we agreed ... we would be required to reverse the Circuit Court's decision for failure to file a written declaratory judgment. The Court in *Harford Mutual v. Woodfin,* 344 Md. 399, 414–415, 687 A.2d 652, 659 (1997), explained as follows:

'This Court has reiterated time after time that, when a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, "the trial court must render a declaratory judgment." ... "Where a party requests a declaratory judgment, it is error for a trial court to dispose of the case simply with oral rulings and a grant of ... judgment in favor of the prevailing party." ' " (Citations omitted.)

*Jackson,* 369 Md. at 593–94, 801 A.2d at 1044–45. That is what occurred in the case at bar. The trial judge in an oral ruling, rendered judgment for respondents and stated that he intended that it be his judgment, and later rendered a written judgment, without incorporating or signing or in any way indicating that the transcript had been reviewed or that the court approved of it. Even though transcribed, there is, on this record, no way to determine from the trial judge's written judgment whether his oral judgment had been transcribed properly or expressly made a part of the written judgment he rendered. It is not sufficient to rely simply on past intentions when a trial judge renders a subsequent written judgment in a declaratory judgment action.

We again noted the relevant law applicable to such actions, when in *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 841 A.2d 858 (2004), Judge Harrell wrote for the Court:

"The judge issued no written memorandum or order memorializing his oral ruling granting Progressive's motion for summary judgment as to the declarations sought in its complaint [ ]. The only written record of the judgment is a 13 December 2002 Notice of Recorded Judgment signed by the Clerk of the Circuit Court for Baltimore County indicating that a judgment in favor of Progressive was entered on 11 December 2002 and listing the 'Amount of Judgment' as 'Costs.' Neither that Notice of Recorded Judgment, nor any other document indicating the existence of a declaratory judgment, was signed by the judge. . . .

"Even were we to agree with the trial court's resolution of the substantive issue in this case, we still would be required to reverse the Circuit Court's judgment for failure to file a written declaratory judgment defining the rights and obligations of the parties." (Citations omitted.)

*Salamon,* 379 Md. at 307–08 n. 7, 841 A.2d at 863 n. 7. *See also Glover v. Glendening,* 376 Md. 142, 156, 829 A.2d 532, 540 (2003), and cases therein cited.

The Court of Special Appeals in its opinion in the present case, although it agreed on the merits with the trial court's

findings, was not able to determine whether the transcript of the trial judge's oral opinion had been attached to the judgment that was mailed to the parties, and remanded the case to the Circuit Court to ensure that the transcript was attached to the judgment and furnished to the parties. It made no determination as to whether the trial judge had signed the transcript, or whether he was required to sign it or otherwise acknowledge its accuracy or incorporate it in writing in a subsequent written judgment, any of which might make it (although we do not now so hold) a separate written judgment required by the cases of this Court and of the Court of Special Appeals.

Our review of the record indicates that the trial judge rendered his oral opinion on the 13th [4] of January 2006, at which time he ordered the court reporter to transcribe that Order which he anticipated being made a part of his judgment. That was done. The court reporter filed the transcript. While the Clerk's docket entry indicated that the transcript was not filed until the 26th of January 2006, the transcript has a clearly marked date stamp of the Clerk's office of the 24th of January (the time of day is not indicated). The trial court, however, rendered its judgment on the 23rd day of January and the Clerk's office did not docket that judgment until the 26th of January 2006.

The apparently conflicting dates can be rationalized by assuming that on the 23rd day of January 2006, the court reporter filed the transcript with the Clerk's office with a copy to the trial judge. Possibly due either to the volume of documents filed in Prince George's County or the time of day it was filed, the original transcript was not actually date-stamped by the Clerk's office until the 24th of January. Meanwhile, the trial court presumably was in possession of a copy of the transcript on the 23rd. The Circuit Court judge then rendered his "written" judgment on that date and shortly thereafter sent it to the Clerk's office for filing. Due either to

---

4. The docket entry was not made until the 17th of January 2006.

a delay in sending the written judgment to the Clerk's office or due to the volume of documents, or both, the actual "written" judgment of the trial judge was not marked as "entered" until the 26th of January 2006.

That written judgment of the trial court stated:

> "**FOR THE REASONS stated in the oral opinion given on January 13, 2006, it is this 23rd day of January, 2006, by the Circuit Court for Prince George's County, Maryland,**
>
> "**ORDERED, that judgment for the Defendants be entered in Counts II and III, and it is further,**
>
> "**ORDERED, that the rights of the parties are declared in the oral opinion.**"

Conspicuously absent from the order is any sufficient attempt to incorporate and attach the written transcript as a part of the trial court's subsequent written judgment.

Additionally, the transcript in the record forwarded to this Court does not contain anywhere the written signature of the trial judge. It remains a transcript of oral proceedings prepared by a transcriber and never adopted specifically as a written document by the trial judge or properly incorporated in, and/or attached to, his written judgment. There is no written indication that the trial judge read the transcript. The trial judge, in his written order, does not inform the parties (or this Court) that he has read the transcript, and thus checked it for accuracy, i.e., that his oral judgment was accurately transcribed. Without that information, it cannot be transformed into a written judgment. It is no more than a court reporter's transcript of an oral opinion. Therefore, it is not elevated to the status of a "separate written document."

Additionally, the trial judge ordered that the "rights of the parties are declared in the oral opinion." This Court and the Court of Special Appeals, as we have indicated earlier, have stated repeatedly that judgments rendered under the Declaratory Judgment Act may not be oral, but must be made in writing. Even if it were possible to transform a transcript of an oral opinion and judgment by signing and expressly adopt-

ing each page of a transcript and by specifically incorporating it, and attaching the signed transcript, in a subsequent "separate" written judgment, the action in the instant case was insufficient.

Ordinarily, we would remand this case to the trial court for entry of a proper written judgment. Under the present circumstances, however, we shall reach the merits and direct the rendering of the appropriate judgment by the trial court.

## RESOLUTION

■ In *Bowen, supra,* we recognized this Court's power, in some instances, to address the issues in a declaratory judgment action even when the trial court's judgment had not been rendered properly in that it was not docketed as a separate judgment in writing. We said in *Bowen:*

> "This error by the Circuit Court, however, is not jurisdictional and is not fatal to our reaching the merits of Petitioners' appeal.... 'This Court may, in its discretion, review the merits of the controversy and remand for the entry of an appropriate judgment by the circuit court.' ... Therefore ... we shall order that on remand, the circuit court shall enter an appropriate declaratory judgment order consistent with this opinion, stating the rights of the parties."

*Bowen,* 402 Md. 587, 607, 937 A.2d 242, 254 (2007). We also have addressed recently the merits where a written declaration in *Messing v. Bank of America,* 373 Md. 672, 821 A.2d 22 (2003),[5] had not been made in writing. We noted then:

> "Because the circuit court granted summary judgment without a declaration of the parties' rights, the intermediate appellate court is correct that the trial court's judgment must be vacated and the case remanded to the circuit court to enter a proper written declaration of the rights of the

---

**5.** The publisher's head note in the opinion as reported in the Maryland Reports, states incorrectly, "On grant of writ of certiorari, the Supreme Court, Harrell, J., held that...." The correct name of this Court is, of course, "Court of Appeals of Maryland."

parties *consistent with this opinion."* (Emphasis added.) (Footnote omitted.)

*Messing,* 373 Md. at 703, 821 A.2d at 40. We also noted in *Messing,* as we note in the instant case, as follows:

"The lack of a declaration of rights, however, requires a vacation. This does not mean that any part of Petitioner's Complaint may be re-litigated. The mandate fashioned in this case is designed such that the end result is solely to have the circuit court enter a proper declaration of rights, consistent with this opinion...."

*Id.* at 703 n. 18, 821 A.2d at 40 n. 18. *See Bushey, supra,* and the cases therein cited.

Accordingly, as we did in *Allstate v. State Farm,* 363 Md. 106, 767 A.2d 831 (2001), we continue to admonish trial courts that, "when a declaratory judgment action is brought and the controversy is appropriate for resolution . . . the court must enter a declaratory judgment and that judgment . . . *must be in writing,"* the present case is of such uniqueness that we shall address the issues so that on remand an appropriate declaratory judgment may be entered. *Id.* at 117 n. 1, 767 A.2d at 837 n. 1 (emphasis in original).

In this case, the trial judge who heard the evidence and rendered the judgment has retired subsequently, and chosen not to be recalled (and accordingly has not been approved by this Court), and thus is not available to correct the nature of his judgment. Furthermore, the transcript of his opinion indicates that it was based, in large part, on his assessment of the credibility of witnesses, i.e., for the most part his selection of what surveying and title witnesses he chose to credit. If we were to remand, without addressing the issues presented, this case to the Circuit Court for Prince George's County for the assignment of an active Circuit Court judge, the judge assigned would very possibly have to hear the entire case again in that, as we have said, the original trial judge based his oral opinion on his assessment of the competing, and apparently conflicting, testimony of alleged expert witnesses in respect to the matters of survey—"I find the testimony of Mr. Leininger,

Mr. Ramsey, and Mr. Roshan more persuasive than testimony of the—testimony offered by the plaintiffs." A newly assigned judge may well have to hear the testimony anew, in order for the judge to assess the credibility of the witnesses. Accordingly, remand would constitute, on this record, an inefficient utilization of judicial resources and cause the parties to incur, unnecessarily, substantial additional costs and expenses, including legal fees.

Additionally, Judge Kenney, for the Court of Special Appeals, prepared an excellent, and correct, opinion on the underlying surveying issue and we shall adopt much of that opinion in formulating our specific directions to the trial court on remand. As to the survey issue, Judge Kenney opined:

"They [respondents] contend that there is no question regarding the location of Lot 146 along Elm Street because it is clearly bounded by another parcel. . . .

. . .

"The circuit court determined that Parcel 146 is 64 feet along Elm Street. Because the boundary between Parcel 146 and Parcels 236, 292, and 152 is not disputed, the court resolved the issue of contention between the parties and clarified their rights regarding the boundary between Parcels 144 and 146. In other words, the boundary begins 64 feet from the boundary between Parcel 146 and Parcels 236, 292, and 152.

. . .

"The Court of Appeals has said that 'a problem of conflicting surveys' is 'fundamentally one of fact.' . . . Thus, the ultimate determination by the circuit court of the proper location of the disputed boundary is a question of fact, which we shall review for clear error.[6] . . .

---

6. Our review is governed by the requirements and provisions of Md. Rule 8–131(c) which provides:

"When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set

. . .

"The Church argues that the language of the 1937 deed is ambiguous because it does not pinpoint the location of the boundary.... According to the Church, the plain language of the 1937 deed, and that in subsequent deeds, does not account for how Julius Jones originally owned 'one acre more or less,' deeded away approximately a quarter of that acre, and still had a full acre to be divided upon his death....

"Well established rules exist to aid in the interpretation of original instruments....

"As a general principle, descriptions of quantity are 'considered inferior' to other forms of descriptions, including 'calls for courses and distances.'... 'Quantity is ordinarily not controlling, unless there are no calls for monuments or for courses and distances set out in the deed.'...

"Moreover, a description of quantity is even less authoritative if it contains qualifying terms, such as 'more or less.' [7] ... In *Brodsky v. Hull*, 196 Md. 509, 77 A.2d 156 (1950), the Court of Appeals stated:

'It is a firmly established rule in this State that where it appears by definite boundaries, or by words of qualification, such as "more or less," in a contract of sale that the statement of the quantity of land is mere estimation and description, and not of the essence of the contract, the

---

aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

**7.** Long ago in a case involving the purchase of property, *Kriel v. Cullison*, 165 Md. 402, 411–12, 169 A. 203, 207 (1933), we noted "the words 'more or less,' when used to qualify a representation of quantity in a contract to convey land, will be construed ... as indicating an intention on the part of the parties ... to assume the risk of quantity, which, until rebutted ... will be recognized and enforced." Conveyances of land containing the phrase "more or less," without qualifying and rebutting language, were sometimes called "contracts of hazard" or "contracts in gross." *See Witmer v. Bloom*, 265 Md. 173, 288 A.2d 323(1972); and *Carozza v. Peacock Land Corp.*, 231 Md. 112, 188 A.2d 917 (1963).

buyer takes the risk of quantity, and is not entitled to an abatement of price on account of a deficiency, in the absence of fraud.'

[*Brodsky,* 196 Md. at 514, 77 A.2d at 158.] . . .

"Calls to monuments, both natural and artificial, are the most reliable means of determining the proper location of boundaries. [4 Herbert T.]Tiffany [ & Basil Jones, *Real Property* ] [ ] § 994 [ (1975, Supp.2006) ]. Moreover, '[t]he line of an adjacent tract, if known or established, may as well be a call in a deed as a natural object.' *Dundalk Holding Co. v. Easter,* 195 Md.[488,] 495[, 73 A.2d 877, 879 (1950),] . . . . Indeed, a call to an adjoining boundary controls over most other methods of description . . . .

"In our view, therefore, the latter description, which is based on calls to adjoining boundaries, is of greater reliability. The deed patently states that Parcel 146 is 64 feet along what is now Elm Street. That language is not ambiguous on its face, and therefore we must assume it expresses the intent of the parties to the deed. That intent can easily be applied to the present boundary dispute. The western boundary of Parcel 146, where it abuts Parcels 236, 292, and 152 is undisputed. Thus, the eastern boundary of Parcel 146, i.e., the boundary at issue, is 64 feet from the western boundary of Parcel 146." (Footnotes added.) (Some citations omitted.)

*Union United v. Burton,* No. 2744, slip op. at 17–23 (July 18, 2007).

More than a half-century ago, we reiterated the same principles in respect to matters of survey and boundary line disputes. We said in *Dundalk Holding, supra,* as follows:

"The issue is a narrow one, involving merely a problem of conflicting surveys. The issue is fundamentally one of fact and the established rules as to preference are simply guides to ascertain the intention of the parties. Calls for monuments, natural or artificial, generally prevail over courses and distances. The line of an adjacent tract, if known or

established [or undisputed], may as well be a call in a deed as a natural object. . . .

"Whatever doubts may exist as to the location of the 25 perch line in the Marx deed, it seems clear that the alternate call to the southwest boundary of the Gulf Oil Corporation lot cannot be disregarded. . . . If the parties adopted that as a fixed point of reference it is immaterial whether it was correctly located by the City in the first instance."

*Dundalk Holding* 195 Md. at 494–95, 73 A.2d at 879.

We agree completely with Judge Kenney's statement of the applicable law and his assessment for the Court of Special Appeals of the correct boundary between Parcels 144 and 146.

■ Accordingly, we shall remand this case to the Circuit Court for Prince George's County, with directions to the Circuit Court to enter a declaratory judgment that the boundary line between Parcels 144 and 146, the boundary line at issue in this case, is situate 64 feet easterly of the undisputed western boundary line of Parcel 146, i.e., the boundary line between Parcel 146 and Parcels 236, 292, and 152.

**CASE REMANDED TO THE COURT OF SPECIAL APPEALS, WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNT, AND TO REMAND THE CASE TO THAT COURT, WITH DIRECTIONS TO DECLARE THAT THE BOUNDARY LINE BETWEEN PARCELS 144 AND 146 IS SITUATE 64 FEET EASTERLY OF THE WESTERN BOUNDARY LINE OF PARCEL 146, WHICH ITSELF IS THE BOUNDARY LINE BETWEEN PARCEL 146 AND PARCELS 236,292, AND 152; COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY THE PETITIONERS.**