71 A.3d 184

**Deborah HIOB, et al.**

v.

**PROGRESSIVE AMERICAN INSURANCE COMPANY, et al.**

No. 3009, Sept. Term, 2010.

Court of Special Appeals of Maryland.

June 25, 2013.

Reconsideration Denied Sept. 3, 2013.

Robert L. Siems, Baltimore, MD, for Appellant.

Angus R. Everton (Morgan, Carlo Downs & Everton, PA, on the brief), Hunt Valley, MD, for Appellee.

Panel: KRAUSER, C.J., KEHOE and BERGER, JJ.

KRAUSER, C.J.

The Court of Appeals held, in *Houghton v. County Commissioners of Kent County,* 305 Md. 407, 504 A.2d 1145 (1986), that the voluntary dismissal by the plaintiffs of the only remaining defendant in that case, amounted to a final judgment under Maryland Rule 2–601 and therefore triggered the thirty-day period for filing a notice of appeal. Eleven years after that decision, Rule 2–601(a) was amended. It now requires that "[e]ach judgment shall be set forth on a separate document." This appeal presents the question of whether the holding of *Houghton* retains any precedential value, notwithstanding that amendment.

Deborah Hiob and the passengers of her vehicle—Margaret Nelson, Laura Dusome, and Virginia Hiob—were in an automobile accident, which resulted in the death of Laura Dusome and Virginia Hiob and serious bodily injuries to Deborah Hiob and Margaret Nelson. When, following that accident, a dispute arose as to the amounts due under their uninsured motorists' insurance policies, Deborah Hiob and her husband, Douglas Hiob, individually and as personal representative of the estate of Virginia Hiob, together with Margaret Nelson and the personal representative of the estate of Laura Du-

some—all of whom are the appellants in this case—brought a declaratory judgment action in the Circuit Court for Baltimore County against appellee, Progressive American Insurance Company ("Progressive"), as well as Erie Insurance Exchange ("Erie Insurance"). The case was then removed to the United States District Court for the District of Maryland. But that court, upon determining that it lacked jurisdiction to consider the matter, remanded this case to the Circuit Court for Baltimore County.

The Baltimore County circuit court ultimately granted Progressive's motion for summary judgment, eliminating it from the case. Sometime after that, appellants, upon reaching a settlement with Erie Insurance, dismissed it from the case and then noted this appeal.

In response, Progressive moved to dismiss this appeal, asserting that appellants had filed their notice of appeal more than thirty days after Erie's dismissal and that, therefore, their appeal was time-barred under Maryland Rule 8–202(a), which requires that a notice of appeal be filed within thirty days "after entry of the judgment." We denied that motion without prejudice and with leave for Progressive to raise this issue in its brief. As Progressive has done so, we now grant that motion and dismiss this appeal.

## Background

On August 17, 2006, Deborah Hiob was driving her 2005 Toyota Corolla westbound on Liberty Road (Maryland Route 26) in Baltimore County. She had three passengers in her car: her mother-in-law, Virginia Hiob, as well as Margaret Nelson and Laura Dusome. At that moment, a truck driven by Raymond Bert Strigle was traveling in the opposite direction on Liberty Road. At some point, Strigle's truck veered across the center line of the road and collided head-on with Hiob's vehicle. All four occupants of Hiob's vehicle sustained serious injuries, and, within the next two months, Virginia Hiob and Laura Dusome died from their injuries. The damages sustained by the four occupants of the Hiob vehicle exceeded the total amount of all available insurance.

On the date of the accident, Strigle owned an automobile insurance policy issued by State Auto Insurance Company ("State Auto"), with "split limits" of liability coverage of $100,000 per person/$300,000 per accident. State Auto settled with the Hiob vehicle's occupants, paying the full $300,000 per accident policy limit, divided among them by mutual agreement, in exchange for waivers by all parties and their insurers of their rights of subrogation against Strigle. As a consequence, neither State Auto nor Strigle has ever been named as a party to this case.

Margaret Nelson, a survivor of the accident, owned an automobile insurance policy issued by Nationwide Mutual Insurance Company ("Nationwide"). Nationwide waived its rights of subrogation and paid $50,000 to Ms. Nelson under the terms of her uninsured motorists' coverage. As a result, it, too, is not a party to this case.

Virginia Hiob, who died after the accident, owned an automobile insurance policy issued by Erie Insurance. Although initially a party in this case, Erie Insurance eventually settled with Virginia Hiob's estate and is not a party to this appeal. The date that Erie Insurance was dismissed from the case plays, as we shall see, a central role in our disposition of this appeal.

Finally, at the time of the accident, Deborah Hiob and her husband, Douglas Hiob, owned an automobile insurance policy issued by Progressive, providing "split limits" of uninsured motorists' coverage of $250,000 per person/$500,000 per accident. Each of the injured occupants of the Hiob vehicle, as well as the estates of the two occupants who had died as a result of the accident, filed claims against Progressive under the uninsured motorists' provision of that policy.

In response to those claims, Progressive asserted that the policy at issue only required it to pay an aggregate of $150,000; that is, the difference between the $500,000 per accident limit and the $350,000 already paid to appellants under other insurance policies. Appellants disagreed, contending that, because the policy stated that the per accident

limit was "subject to" the per person limit, the per person limit should control and that, therefore, Progressive was liable for amounts to each of the injured parties up to the respective $250,000 per person limits, so long as its aggregate payments did not exceed $500,000. Therefore, according to appellants, Progressive's refusal to pay more than $150,000 in total was in violation of that policy.

In any event, because appellants and Progressive agreed that Progressive was liable for at least $150,000, Progressive paid that amount to appellants, dividing it among them as agreed. Then, seeking a resolution of their claim to the remainder of the funds purportedly owed under the uninsured motorists' provision, appellants filed a declaratory judgment action in the Baltimore County circuit court. Cross motions for summary judgment eventually [1] followed.

On September 23, 2009, the circuit court granted Progressive's motion for summary judgment and denied appellants'. A written order, setting forth that disposition, was docketed on October 7, 2009. The order declared that "Progressive's aggregate policy limit for the uninsured/underinsured motorist claims" was "$150,000.00, representing its $500,000.00 per accident limit, less the total amount of other insurance coverage available and paid to [appellants], $350,000.00"; and that, having paid, as agreed by the parties, a total of $150,000 to appellants, Progressive had "paid its policy limit to" appellants, and there was "no additional uninsured/underinsured motorist coverage available to [appellants] under the Progressive policy." As of the date the order was docketed, the case remained open because Erie Insurance was still a party.

The docket reflects no further activity for more than a year. Meanwhile, as noted earlier, appellants and Erie Insurance had agreed to a settlement. Appellants thereafter filed a line voluntarily dismissing Erie Insurance from the case "with prejudice." That dismissal was entered on the docket on

---

1. Because the case was removed to federal court and then remanded to state court, the first summary judgment motion was not filed until more than fifteen months after the case was originally filed in state court.

January 10, 2011. On that same day, appellants filed a motion to reduce the order of October 7, 2009, to final judgment. Then, more than thirty days later, on February 15, 2011, appellants filed a notice of appeal. Ten days after that, on February 25, 2011, the Baltimore County circuit court granted appellants' motion to reduce the order of October 7, 2009, to final judgment. The February 25 docket entry states: "final judgment is entered on this 8th day of Feb. 2011 and the earlier findings & rulings ... set out in [the] order dated 9/23/09/filed Oct 7, 2009 are incorporated into this final judgment."

## Discussion

Relying on Maryland Rule 2–601, which governs entry of judgments, Progressive maintains that the voluntary dismissal of Erie Insurance by appellants, as a party to this matter, on January 10, 2011, effectively rendered the October 7, 2009 order a final judgment and set the clock ticking for noting an appeal. Then, invoking Rule 8–202(a), which requires that a "notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken," Progressive contends that appellants were required to file the notice of appeal within thirty days of January 10, 2011, or, in other words, no later than February 9, 2011. Because the notice of appeal was filed six days after that date, Progressive asserts that their appeal was untimely and should be dismissed.

Appellants respond that, because the docket below shows that final judgment was "entered on this 8th day of Feb. 2011 and the earlier findings & rulings ... set out in [the] order dated 9/23/09/filed Oct. 7, 2009 [were] incorporated into this final judgment," a "reasonable application" of Rule 8–202 leads to the conclusion that the Baltimore County circuit court "treated February 8, 2011 as the date of entry of final judgment in this case," and so should we.

The grant of appellants' motion to reduce the October 7, 2009 order to final judgment is, in our view, inconsequential. Once Erie Insurance was dismissed from the case, there were

no more defendants or claims before the circuit court in this matter. Thus, final judgment, as Progressive maintains, was entered in this case on January 10, 2011, when the clerk of the circuit court entered appellants' voluntary dismissal of Erie Insurance.

We reach this conclusion based on *Houghton v. County Commissioners of Kent County*, 305 Md. 407, 504 A.2d 1145 (1986), which was decided under a previous version of Maryland Rule 2–601, and *Houghton's* progeny, which were decided under a later version of that rule. We begin with *Houghton* where, under similar procedural circumstances, the Court of Appeals reached the same result as we do here.

In that 1986 case, the trial court granted the defendants' motion to dismiss counts I and III of a three-count complaint, and, thereafter, the plaintiffs voluntarily dismissed, with prejudice, count II. Both actions were entered on the docket, but neither was designated as a "judgment." *Id.* at 410, 504 A.2d 1145. Then, roughly three months later, the circuit court ordered that a "final judgment" as to counts I and III be entered on the docket, and, the following day, the plaintiffs noted an appeal. *Id.* at 411, 504 A.2d 1145.

At that time, Maryland Rule 2–601 ("Entry of judgment") (1984) [2] stated in part:

(a) When entered. Upon a general verdict of a jury or upon a decision by the court allowing recovery only of a sum certain or costs or denying all relief, the clerk shall forth-

---

**2.** When *Houghton* was decided, on February 25, 1986, the version of the rule then in effect was the same as that enacted in 1984, as part of the comprehensive rules revision. Since then, the following amendments have been enacted:
1. Effective July 1, 1986. In section (a), substituted "costs or a specified amount of money" for "a sum certain or costs" in the first sentence, rewrote the second sentence, and added the third sentence.
2. Effective October 1, 1997 (the amendment we are focused on in this opinion).
3. Effective January 1, 2002. Deleted "general" preceding "verdict" and deleted "upon" preceding "a decision" in the second and third sentences of (a).
4. Effective January 1, 2004. Changed the Source note reference.

with enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the court shall promptly approve the form of the judgment, and the clerk shall then enter it. (b) Method of entry—Date of judgment. The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

❖    *    ❖

As the Court of Appeals observed, the initial order granting the defendants' motion to dismiss counts I and III of the complaint, as well as the subsequent voluntary dismissal of the only remaining count, "were entered on the docket as required by Rule 2–601(b)," and, because "[n]othing in Rule 2–601 ... requires that the word 'judgment' always be used as a prerequisite to finality," the absence of that term from the two orders did not prevent the Court from concluding that they, together, "constituted the final judgment of the circuit court." *Houghton*, 305 Md. at 412–13, 504 A.2d 1145. Consequently, the Court dismissed the appeal, finding that it had been filed more than thirty days after the entry of judgment. *Id.* at 413, 504 A.2d 1145.

In concluding our discussion of that case, we pause briefly to note that, when *Houghton* was decided, Maryland Rule 2–601(b) was identical to the current version of section (b) of the rule. In fact, the principal difference between the current rule and the version of the rule then in effect is the amendment to section (a) of the rule which occurred in 1997. That amendment incorporated the "separate document" requirement, the effect of which was "to convert the official form of a judgment from a docket entry to a separate document." *Byrum v. Horning*, 360 Md. 23, 33, 756 A.2d 560 (2000).

Prior to the adoption of that amendment, there had been concern expressed that, under the then extant version of the rule, attorneys may "be trapped because they do not know the

exact date of the judgment, and they may lose an appeal." Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, Oct. 8, 1993, at 11 (available at http:// mdcourts.gov/lawlib/collections/digitalcollections.html) (last visited May 24, 2013). An example of the confusion wrought by the rule was outlined in *Davis v. Davis*, 335 Md. 699, 646 A.2d 365 (1994), where a circuit court orally announced the judgment of the court, and the clerk thereafter entered that oral judgment on the docket, only to have the same court later issue an order memorializing that judgment, which was also entered on the docket. *Id.* at 704–05, 646 A.2d 365. In that case, the Court of Appeals held, under the pre–1997 version of Rule 2–601(a), that the earlier oral judgment, once docketed by the clerk, became a final judgment. *Id.* at 709–17, 646 A.2d 365. As a consequence, the appellant in that case lost his right to appeal from that judgment, as he did not note an appeal until more than thirty days after entry of judgment. *Id.* at 717–18, 646 A.2d 365.

To help eliminate the confusion and uncertainty generated by the pre–1997 rule, the "separate document" requirement, patterned after Federal Rule of Civil Procedure 58, was adopted. Reporter's Note to Proposed Rule 2–601, 23 Md. Reg., Issue 24, Fri., Nov. 22, 1996, at 1667; Rules Order, 24 Md. Reg., Issue 9, Fri., Apr. 25, 1997, at 649–50. As amended, section (a) now [3] provides:

(a) Prompt entry—Separate document. Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment

---

**3.** Since 1997, there have been two minor revisions to Rule 2–601: one amendment, effective January 1, 2002, deleted the words "general" preceding verdict and "upon" preceding "a decision" in the second and third sentences of section (a); the other amendment, effective January 1, 2004, changed the Source note reference.

presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

In light of that amendment to the rule, the question naturally arises whether *Houghton* is still "good law." A popular treatise on Maryland civil procedure seems to suggest that it is not. Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 488–89 (3d ed.2003). That treatise describes a sequence of procedural events similar to that which took place here, a sequence which it terms a " 'springing' finality"—that is, when there is a non-final order disposing of only some claims (or of all of the claims, but of fewer than all of the parties), followed by a subsequent order, perhaps "months or even years later," disposing of all remaining claims and parties, thereby resulting in a final judgment. *Id.* at 488, 504 A.2d 1145. It then asserts: "This 'springing' finality trap is substantially eliminated with the requirement adopted in 1997 that the judgment be embodied in a separate document. This is because the rule contemplates that *one* document is to embody the entire judgment and therefore that the appeal period runs from the entry of that document on the docket." *Id.* at 488–89, 504 A.2d 1145 (emphasis in original). But neither the "legislative history" of Rule 2–601 nor subsequent caselaw supports this view.

When the amendment to Rule 2–601(a) was being considered by the Rules Committee, one of the Committee members, Melvin J. Sykes, Esquire, "asked how piecemeal judgments [would] be handled under the modified Rule," noting that, under the then-existing rule, "when a party [was] dismissed at some point in the case, the dismissal [was] entered on the docket." Draft Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, May 17, 1996, at 4 (on file at Rules Committee). Another Committee member, Lowell R. Bowen, Esquire, replied that, under the proposed amendment, the entry of that dismissal "would be [on] a

separate document" and that the docket would contain "a notation" to that effect "and the date of it." *Id.* He further "explained that the docket entry is a warning that a judgment has been entered, so someone can go to the file to read it." *Id.* at 5. It thus appears that, under the amended rule, the only difference as to "piecemeal judgments" was that they would have to be in the form of a separate document.

That view has been confirmed by subsequent decisions of the Court of Appeals, rendered after the adoption of the "separate document" requirement, and thus, *Houghton* remains viable. *See, e.g., Miller & Smith at Quercus, LLC v. Casey PMN, LLC,* 412 Md. 230, 243–44, 987 A.2d 1 (2010) (discussing *Houghton* favorably); *Tierco Md., Inc. v. Williams,* 381 Md. 378, 393, 849 A.2d 504 (2004) (observing that "final judgment would have been completed . . . with the entry of a written final order disposing of" claims of sole remaining plaintiff); *Byrum v. Horning, supra,* 360 Md. 23, 756 A.2d 560. We shall consider one of those cases, *Byrum,* in greater detail, as it illustrates how "piecemeal judgments" should be analyzed under the amended version of Rule 2–601.

*Byrum,* a case in which the Court granted certiorari for the express purpose of addressing the effects of the 1997 amendment, 360 Md. at 24, 756 A.2d 560, involved a dispute over the use of a right-of-way between Barney L. and Elizabeth Byrum, and Rodney C. and Barbara L. Horning and Jack W. Harvey. *Id.* at 27, 756 A.2d 560. There were two separate actions: one of those actions, No. 94–10601, was a claim by the Byrums against the Hornings and Harvey; the other, No. 93–10121, was a claim by the Hornings seeking "to enjoin the Byrums from blocking the disputed right-of-way." *Id.*

The two cases were consolidated, and, when they were tried by the circuit court on July 15, 1999, the Byrums did not appear, and the court granted judgment in favor of the Hornings and Harvey. *Id.* at 28, 756 A.2d 560. Although "[t]hat same day," the court clerk "generated entries into the computer-maintained docket of the circuit court" reflecting that disposition, "[n]o separate document setting forth the

judgment or judgments signed by the clerk (or by the judge) was filed in the court file on that date." *Id.*

Instead, a separate, undated document, noting the entry of judgment, in case No. 94–10601 (the claim by the Byrums against the Hornings and Harvey), in favor of Harvey but omitting any mention of the Hornings, was signed by the trial court and thereafter was "filed by the clerk on August 6, 1999, and entered into the computerized docket on August 9, 1999." *Id.* "Thus, per Rule 2–601(a) judgment was entered in Harvey's favor on the Byrums' claim against him, and, under Rule 2–601(b), the date of that judgment was August 9, 1999," explained the Court. *Id.* at 28–29, 756 A.2d 560. But, noted the Court, there was "no final judgment in action No. 94–10601 at that time, because no judgment had been entered on the claim of the Byrums against the Hornings." *Id.* at 29, 756 A.2d 560 (citing Md. Rule 2–602(a)).[4]

Then, another undated document in the same case (No. 94–10601) was also signed by the trial court, noting the entry of judgment in favor of the Hornings. "This separate document was filed in the court file on August 13, 1999, and entered into the computerized docket on August 16, 1999." *Id.* at 29, 756 A.2d 560. The Court of Appeals held: "All claims in No. 94–10601 having been adjudicated, the judgment entered on August 16, 1999, constituted final judgment in that action," and, "[c]onsequently, the thirty day period within which to appeal to the Court of Special Appeals is calculated from August 16, 1999." *Id.*

Thus, in a decision where the Court of Appeals expressly addressed the "separate document" requirement, it held that a case could be disposed of piecemeal, by the successive docketing of judgments, none of which were of a final nature (as

---

**4.** Maryland Rule 2–602(a) provides that, with exceptions not relevant here, "an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action ... is not a final judgment."

none of them, individually, adjudicated all of the claims as to all of the parties), so long as each judgment was entered in a manner that complied with Rule 2–601, and that finality ultimately attaches when the last such judgment is docketed. In short, the "separate document" requirement has no effect on the Court's holding in *Houghton.*

Turning to the instant case, we observe that the order granting Progressive's motion for summary judgment was memorialized in a separate document, as required under Rule 2–601(a); was signed by the trial judge; and was docketed on October 7, 2009, as required under Rule 2–601(b). That order, moreover, met the requirements of a declaratory judgment with respect to all of the parties except Erie Insurance (which was subsequently dismissed). *See, e.g., Union United Methodist Church, Inc. v. Burton,* 404 Md. 542, 552, 948 A.2d 1 (2008) (observing that "[*w* ]*hen entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties* ") (citations omitted) (emphasis in original).

The line of dismissal was entered on January 10, 2011. As required by Rule 2–506(a)(2),[5] that line of dismissal was

---

**5.** Maryland Rule 2–506 ("Voluntary dismissal") provides:

(a) By Notice of Dismissal or Stipulation. Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of the claim without leave of court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) a stipulation of dismissal signed by all parties to the claim being dismissed.

(b) By Order of Court. Except as provided in section (a) of this Rule, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been filed before the filing of a plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who filed the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

(c) Effect. Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of

"signed by all parties to the claim being dismissed" and, thus, was properly entered "without leave of court." Moreover, "[t]he dismissal of [appellants'] claims" against Erie "was a judgment governed by Rule 2–601." *Tierco Md., Inc. v. Williams, supra*, 381 Md. at 393, 849 A.2d 504. To determine whether the dismissal complied with Rule 2–601, we look to *Tierco*, where the Court of Appeals explained how Rule 2–601 applies to a dismissal of a claim:

> According to Rule 2–601, each dismissal must be memorialized by a document in the case file. The word "judgment" need not appear on the document. Nor is the judge necessarily required to sign an order of voluntary dismissal, which is a judgment that denies all relief. The document need only put litigants and the public on notice that the claim has been resolved. It must also be docketed, entered, and recorded by the clerk. These steps ensure that litigants, third parties, and the public have access to the disposition of every civil claim brought in Maryland's circuit courts.

*Id.* at 394, 849 A.2d 504 (citation omitted).

Although the word "judgment" does not appear on the line of dismissal in this case, and the judge did not sign it, neither of those is required. *Id.* The line of dismissal does, nonetheless, "put litigants and the public on notice that the claim has been resolved" and was, as required by rule, "docketed, entered, and recorded by the clerk." *Id.* We conclude that the line of dismissal complied with the requirements of Rules 2–506 and 2–601.

Consequently, the instant case is procedurally indistinguishable from *Houghton*. We therefore hold that the docketing of appellants' dismissal of Erie Insurance, on January 10, 2011, together with the October 2009 entry of summary judgment in

---

any state or in any court of the United States an action based on or including the same claim.

(d) Costs. Unless otherwise provided by stipulation or order of court, the dismissing party is responsible for all costs of the action or the part dismissed.

favor of Progressive, "constituted the final judgment of the circuit court," 305 Md. at 413, 504 A.2d 1145, and that the date of that judgment was January 10, 2011, the date the suit ended with the dismissal of Erie. Thus, a straightforward application of Rule 8–202(a) compels us to conclude that the instant notice of appeal was untimely. Moreover, because adherence to the time limit for filing a notice of appeal is a jurisdictional requirement, *see, e.g., Houghton,* 305 Md. at 413, 504 A.2d 1145; *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.,* 183 Md.App. 710, 740–41, 963 A.2d 253 (2009), appellants' failure to file their notice of appeal within thirty days of January 10, 2011 mandates the dismissal of their appeal.

**APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANTS.**